**CONFEDERATION OF POLICE, Individually and on behalf of its members, et al., Plaintiffs-Appellees,**

**v.**

**James B. CONLISK, Jr., Individually and as Superintendent, Chicago Police Department, et al., Defendants-Appellants.**

**No. 73–1543.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 14, 1973.

Decided Nov. 29, 1973.

Certiorari Denied April 22, 1974. See 94 S.Ct. 1971.

---

Richard L. Curry, Daniel R. Pascale, Chicago, Ill., for defendants-appellants.

David A. Goldberger, Barbara P. O'Toole, American Civil Liberties Union, Chicago, Ill., for plaintiffs-appellees.

Before CASTLE, Senior Circuit Judge, and PELL and SPRECHER, Circuit Judges.

PELL, Circuit Judge.

This is an appeal from an order of the district court which, *inter alia*, directed the defendants to reinstate the individual plaintiffs to their civil service positions in the Chicago Police Department. Plaintiffs are the Confederation of Police and six individually named police officers. The defendants are officials of the Police Department and members of the Police Board.

All of the individually named plaintiffs were subpoenaed to appear before a federal grand jury investigating allegations of criminal conspiracies and corruption among members of the Chicago Police Department. At the grand jury, each police officer was informed by the United States Attorney that whatever the witness said could be used against him. Each policeman was also advised of his Fifth Amendment privilege against self-incrimination. In reliance on the prior advice of counsel, each of the plaintiffs invoked the privilege and declined to answer questions. After the appearances at the grand jury, each of the police officers was summoned to appear before the Internal Affairs Division (IAD) of the Chicago Police Department. At this departmental inquiry, each policeman was directed by a superior officer to answer questions as to whether he had invoked the privilege against self-incrimination at his appearance before the grand jury. With a single exception, no police officer was questioned by the IAD concerning his "official duties," using that term in the sense of obligations ordinarily associated with police work as such.

All six police officers were suspended or discharged for violating certain rules of the Chicago Police Department by invoking the privilege against self-incrimination at the grand jury session. In particular, Rule 51 of the Police Department rules prohibited:

"Failing to give evidence before the Grand Jury, Coroner's inquest, in court, or before any governmental administrative body, including the Police Board, when properly called upon to

do so, or refusing to testify on the grounds that such testimony might incriminate the member, or refusing to sign a waiver of immunity when requested to do so by a superior officer." [1]

Suit was then brought by the six individual police officers and by the Confederation of Police on behalf of its members challenging the propriety of the suspensions and firings. The district court granted the plaintiffs' motion for summary judgment and this appeal followed.

I

Analysis of the applicable case law must begin with Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). In *Garrity*, policemen were questioned at an investigatory hearing about alleged traffic ticket "fixing." Each policeman, after being told that he would be subject to discharge from office if he refused to answer, gave the requested information. The officers' answers were then used in subsequent criminal prosecutions in which the policemen were convicted. The Supreme Court reversed the convictions, holding that the threat of discharge was a form of compulsion, depriving the policemen of a free choice as to whether to answer. "[T]he protection of the individual under the Fourteenth Amendment against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office." 385 U.S. at 500, 87 S.Ct. at 620.

In Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967), the companion case of *Garrity*, the Court held that an attorney could not be disbarred solely because he refused to testify at a judicial inquiry when his refusal was based on the ground that his testimony would tend to incriminate him. Justice Fortas, concurring, went on to state:

"This Court has never held . . . that a policeman may not be discharged for refusal in disciplinary proceedings to testify as to his conduct as a police officer. It is quite a different matter if the State seeks to use the testimony given under this lash in a subsequent proceeding [as in *Garrity*]." 385 U.S. at 519–520, 87 S.Ct. at 630.

In Gardner v. Broderick, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968), and Uniformed Sanitation Men Ass'n, Inc. v. Commissioner of Sanitation, 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968), the municipal employees involved had pursued an alternative course of action to that taken in *Garrity*. In *Gardner*, a policeman, pursuant to a subpoena, appeared before a grand jury investigating bribery and corruption in the police force. The police officer was advised of his privilege against self-incrimination but he was asked to sign a "waiver of immunity" after being told he would be discharged if he did not sign it. The officer in *Gardner*, unlike the policeman in *Garrity*, declined to testify and also refused to sign the waiver. He was then given an administrative hearing and discharged solely for his refusal to sign the waiver of immunity form. Similarly, in *Uniformed Sanitation Men*, municipal employees refused to testify or sign waivers of immunity when called before the city's Commissioner of Investigation, who was inquiring into improper activities by sanitation employees. As in *Gardner*, an administrative hearing was then held, after which the sanitation employees were discharged for refusing to testify.

1. The other pertinent rules are:
"IV. RULES OF CONDUCT.
"[T]he following rules of conduct set forth expressly prohibited acts.
* * *
Rule 2. Any action or conduct which impedes the Department's efforts to achieve its goals, or brings discredit upon the Department.
* * *
Rule 5. Failure to perform a duty.
Rule 6. Disobedience of an order or directive, written or oral."

A unanimous Court held the dismissals in both cases to be violative of constitutional rights. As the Court noted in *Gardner*, the policeman there "was discharged from office, not for failure to answer relevant questions about his official duties, but for refusal to waive a constitutional right. He was dismissed for failure to relinquish the protections of the privilege against self-incrimination." 392 U.S. at 278, 88 S.Ct. at 1916. The employees in both cases were entitled to remain silent at the inquiries into the alleged improper conduct since "it was clear that New York was seeking . . . testimony from their own lips which, despite the constitutional prohibition, could be used to prosecute them criminally." 392 U.S. at 284, 88 S.Ct. at 1919.

Justice Fortas, writing for the Court in both *Gardner* and *Uniformed Sanitation Men*, expanded on his earlier statement in *Spevack* that the Court had never held that "a policeman may not be discharged for refusal in disciplinary proceedings to testify as to his conduct as a police officer." Spevack v. Klein, *supra* at 519, 87 S.Ct. at 630. In *Gardner* and *Uniformed Sanitation Men*, Justice Fortas distinguished the situation then before the Court—where public employees were questioned by their employer only as to whether they exercised their Fifth Amendment privilege and were discharged solely for doing so in circumstances in which any testimony might have been used against them in criminal proceedings—from the situation in which employees were discharged after "an accounting of their use or abuse of their public trust." 392 U.S. at 284, 88 S.Ct. at 1919. Justice Fortas characterized the latter situation as one in which the public employer demands, with threat of discharge, that its employee "answer questions specifically, directly, and narrowly relating to the performance of his official duties, without being required to waive his immunity with respect to the use of his answers or the fruits thereof in a criminal prosecution of himself." 392 U.S. at 278, 88 S.

Ct. at 1916. In his footnote to this statement, Justice Fortas specifically noted that "the statements in my separate opinion in Spevack v. Klein, *supra,* at 519–520 . . . are expressly limited to situations of this kind." 392 U. S. at 278 n. 5, 88 S.Ct. at 1916. After such an "accounting for public trust," the employee may be dismissed either on the basis of his answers or for refusal to answer. However, should the employee answer, his answers, under *Garrity*, cannot be used against him in a subsequent criminal proceeding since they were the result of threat of discharge. In an "accounting for public trust," therefore, the employee is faced with the choice of answering or being dismissed from his job, but he knows that, should he answer, he cannot be criminally prosecuted on the basis of his own testimony. As Judge Friendly noted in Uniformed Sanitation Men Ass'n, Inc. v. Commissioner of Sanitation, 426 F.2d 619, 627 (2d Cir. 1970), cert. denied, 406 U.S. 961, 92 S.Ct. 2055, 32 L.Ed.2d 349 (1972), the sequel to the Supreme Court decision:

> "[P]ublic employees do not have an absolute constitutional right to refuse to account for their official actions and still keep their jobs; their right, conferred by the Fifth Amendment itself, as construed in *Garrity*, is simply that neither what they say under such compulsion nor its fruits can be used against them in a subsequent prosecution."

■ In sum, then, the *Gardner* and *Uniformed Sanitation Men* decisions indicate that a public employer may discharge an employee for refusal to answer where the employer both asks specific questions relating to the employee's official duties and advises the employee of the consequences of his choice, *i. e.,* that failure to answer will result in dismissal but that answers he gives and fruits thereof cannot be used against him in criminal proceedings. Kalkines v. United States, 473 F.2d 1391, 1393 (Ct. Cl.1973); Uniformed Sanitation Men Ass'n, Inc. v. Commissioner of Sanita-

tion, 426 F.2d 619, 627 (2d Cir. 1970), cert. denied, 406 U.S. 961, 92 S.Ct. 2055, 32 L.Ed.2d 349 (1972).

■ In the present case, the policemen declined to answer questions at a grand jury, although they knew that, under Rule 51 of the Chicago Police Department rules, they could be discharged for so doing.[2] When called before the IAD, the policemen were not, with one exception,[3] asked specific, narrow questions relating to their official duties. Each was questioned, rather, only as to whether he had invoked the privilege against self-incrimination at the grand jury. Thereafter, the policemen were fired or suspended solely for invoking the Fifth Amendment at the grand jury. At no time, either at the grand jury or at the IAD inquiry, were the police officers informed that any information which they gave would not be used against them in criminal proceedings.[4] These discharges were clearly unconstitutional under the rulings of *Gardner* and *Uniformed Sanitation Men*. The IAD inquiry was in no sense an "accounting of public faith" as the questions were not "specifically, directly, and narrowly" related to official duties and the officers were not advised that their answers would not be used against them in criminal proceedings.

## II

■ Rule 51, to the extent that it denies police officers the privilege against self-incrimination where criminal prosecution may follow, is constitutionally invalid. That portion of it falls directly within the purview of *Gardner* and *Uniformed Sanitation Men*.

The district court held that Rules 2, 5, and 6 were unconstitutional as applied in this case. We agree with this determination. Rules 2, 5, and 6 were used only in conjunction with Rule 51 in discharging the six policemen. The underlying "violation" in each case was the exercise of the privilege against self-incrimination before the grand jury, which was prohibited by Rule 51. Since we have found Rule 51 to be constitutionally invalid insofar as it denies the Fifth Amendment right to a public employee where there is a possibility of criminal prosecution, the use of Rules 2, 5, and 6 in conjunction with Rule 51 in such a circumstance was also invalid.

For the reasons above stated, the judgment of the district court is affirmed.

Affirmed.

---

2. Appellants stress that the United States Attorney at the grand jury could not have discharged the policemen who were city employees. We deem this point to be wholly immaterial to the disposition of the case. The compulsive factor was no less real.

3. The one question to officer Shuey was answered unequivocally.

4. Appellants argue that the IAD is not empowered to grant immunity from prosecution to the police officers. Such a power, however, is not necessary. In *Garrity* the Supreme Court indicated that the Fifth Amendment *itself* prohibited the use of statements or their fruits where the statements had been made under the threat of dismissal from public office. Therefore, by advising the officers that their statements, when given under threat of discharge, cannot be used against them in subsequent criminal proceedings, the IAD is not "granting" immunity from prosecution; it is merely advising the officers of the constitutional limitations on any criminal prosecution should they answer. Uniformed Sanitation Men Ass'n, Inc. v. Commissioner of Sanitation, 426 F.2d 619, 627 (2d Cir. 1970), cert. denied, 406 U.S. 961, 92 S.Ct. 2055, 32 L.Ed.2d 349 (1972).