**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert F. DEVITT, Defendant-
Appellant.**

**No. 73–1691.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 6, 1973.

Decided July 2, 1974.

Julius Lucius Echeles, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., Dan K. Webb, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before HASTINGS and KILEY, Senior Circuit Judges, and CAMPBELL, Senior District Judge.*

WILLIAM J. CAMPBELL, Senior District Judge.

Defendant Robert F. Devitt, a Chicago police officer, was indicted in a one count indictment for having made false statements before a grand jury in violation of 18 U.S.C. § 1623. Upon the jury's verdict of guilty, defendant was sentenced to three years' imprisonment.

* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

The indictment charged that the defendant:

"did knowingly declare in substance before said Grand Jury with respect to the aforesaid material matters that he did not recall, remember, or have any knowledge, while in the performance of his duties as a Chicago police officer of ever accepting money from any person; that he did not recall, remember, or have any knowledge while in the performance of his duties as a Chicago police officer, of ever having accepted any money from any owner, operator, employee or agent of any tavern or business."

18 U.S.C. § 1623 provides, in pertinent part:

"(a) Whoever under oath in any proceeding before [a] . . . grand jury . . . knowingly makes any false material declaration . . ., shall be fined not more than $10,000.-00 or imprisoned not more than five years, or both.

\* \* \*

(e) Proof beyond a reasonable doubt under this section is sufficient for conviction. It shall not be necessary that such proof be made by any particular number of witnesses or by documentary or other type of evidence.

At trial, the government presented testimony of four witnesses, each of whom operated a tavern in Chicago, Illinois, and each of whom testified to having paid money to defendant while Devitt was in the performance of his duties as a Chicago police officer. Defendant testified in his own behalf and denied receiving any such payments.

■ Defendant's first contention on appeal is that the indictment did not sufficiently allege, and the evidence was insufficient to prove, that, at the time he appeared before the grand jury, defendant was under oath administered by one authorized by law to administer oaths. The indictment in the instant case charged that defendant knowingly made a false material declaration "while

under oath as a witness before the Special February 1971 Grand Jury of the United States of America, duly empaneled and sworn in the United States District Court for the Northern District of Illinois . . .". The indictment clearly alleged that defendant was under oath at the time he made the alleged false material declarations. The fact that the indictment does not allege that the oath was "administered by one authorized by law to administer oaths" is of no consequence. 18 U.S.C. § 1623 contains no such requirement.

■ Regarding the sufficiency of the evidence, the Justice Department attorney present during the grand jury proceedings testified at trial that Devitt was administered the oath by the foreman of the grand jury on February 23, 1972. The transcript of Devitt's testimony was subsequently introduced into evidence. We find no merit to defendant's contention that this evidence was insufficient to prove that he testified under oath.

## INSTRUCTIONS

■ We also reject defendant's assertion that the trial court invaded the province of the jury in failing to instruct the jury that the defendant must be found to have been under oath administered by one competent to administer oaths. As previously noted, 18 U.S.C. § 1623 requires neither that the indictment allege nor that the government prove that the accused took an oath "administered by one authorized by law to administer oaths". Moreover, defendant neither objected to the instructions relating to the administration of the oath nor tendered to the district court proposed instructions reflecting the position now advanced on appeal.

■ Defendant also argues that Instruction 29 was erroneous because it did not require that Devitt be found to have accepted money from any one or more of the tavern owners named in the indictment "in the performance of his duties as a Chicago police officer", as al-

leged in the indictment. The instructions, in their entirety, repeatedly advised the jury that defendant must be found to have accepted money "in the performance of his duties as a Chicago police officer", and viewed in their entirety, we find the instructions to the jury more than adequate. United States v. Esquer, 459 F.2d 431, 435 (7th Cir. 1972).

## MATERIALITY

◼ To sustain a conviction under 18 U.S.C. § 1623, the defendant's false declarations must be "material". Conceding that the issue of materiality under 18 U.S.C. § 1623 is a question of law to be determined by the court, United States v. Wesson, 478 F.2d 1180, 1181 (7th Cir. 1973); United States v. Rivera, 448 F.2d 757 (7th Cir. 1971); United States v. Parker, 447 F.2d 826, 830 (7th Cir. 1971), defendant contends that his allegedly false declarations were not material, as a matter of law, for two reasons:

(1) The grand jury's inquiry pertained to "purely local conduct", and was therefore not a proper subject for investigation under the Hobbs Act, 18 U.S.C. § 1951.

(2) The grand jury's examination of the defendant "was not pursuant to any legitimate grand jury function" because the grand jury had already amassed information from independent sources sufficient to seek an indictment against defendant without summoning him.

Contending that the grand jury's investigation "involved nothing more than alleged 'pay-offs' by tavern owners to policemen" and that the "Hobbs Act, 18 U.S.C. Sec. 1951 cannot properly be applied to such purely local activities", defendant argues that the questions asked of him during that investigation were not "material". The underlying proposition advanced by defendant—that the conduct under investigation was not properly subject to federal criminal jurisdiction—has previously been rejected by this court in United States v. DeMet, 486 F.2d 816 (7th Cir. 1973). There, confronted with the same arguments now advanced by Devitt, the court held that "Section 1951 clearly contemplates a full application of the commerce power. It proscribes extortion which 'in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce . . .'." 486 F.2d at 821.

The *DeMet* court found that commerce had been affected by the same kind of extortionate activities which were under investigation by the grand jury in the instant case. Moreover, the victims of extortion in *DeMet* were, as here, retail liquor establishments. Judge Fairchild, speaking for the court, rejected the argument that commerce had not been affected, holding that:

"Where the victim of extortion, as here, customarily obtains inventory which has come from outside the state, obstruction and delay of, and effect upon commerce may, for the purpose of the Hobbs Act, be found in curtailment of the victim's potential as a buyer of such goods. This may be traced either through the depletion of his assets by his fulfillment of the extortionate demands or the harm which would follow if the threats were carried out." 486 F.2d at 822.

◼ Since the grand jury's investigation concerned conduct which might properly be made the subject of federal criminal prosecution, defendant's false testimony concerning such activities was not immaterial.

Defendant's second contention respecting materiality is that the allegedly false testimony did not influence, impede or dissuade the grand jury in connection with its investigation. Defendant argues that the questions directed to him did not concern "official corruption" generally, but rather were limited solely to his conduct while in the performance of his duties as a Chicago police officer. Since the grand jury had

previously heard testimony from the four tavern owners who ultimately testified against defendant during his trial, defendant maintains that no further "fruitful investigation" would have resulted from truthful responses to the questions asked of him by the grand jury.

■ False testimony before the grand jury is material if it "has the natural effect or tendency to impede, influence or dissuade the grand jury from pursuing its investigation. United States v. Stone, 429 F.2d 138, 140 (2nd Cir., 1970), and cases cited therein. Moreover, if the false statement "potentially interferes with the grand jury's line of inquiry, materiality is thereby established even though the perjured testimony does not actually impede the investigations." United States v. Wesson, 478 F.2d 1180, 1181 (7th Cir., 1973). See also, Vitello v. United States, 425 F.2d 416, 424 (9th Cir. 1970); United States v. Henderson, 185 F.2d 189, 191 (7th Cir. 1950).

■ In the instant case, the grand jury was engaged in an investigation of possible extortionate conduct by certain Chicago Police Department personnel in violation of the Hobbs Act. Defendant's false declarations potentially interfered with and impeded that investigation insofar as defendant's false answers rendered further inquiry on the subject a meaningless exercise. Had defendant answered honestly, the grand jury would have been advised that he had, in fact, accepted money from tavern owners while in the performance of his duties as a Chicago police officer. The grand jury would then have been in a position to determine the identity of other extortion victims, if any, who had not previously been identified. Potentially, honest responses to the questions asked of defendant might have led to a determination of the identity of other police officers, if any, engaged in similar practices.

In short, the fact that the questions which defendant failed to answer truthfully related only to *his* conduct as a Chicago police officer is not dispositive. Truthful answers to those questions might well have served as the foundation for a more "fruitful investigation" into the broader subject matter of the grand jury's inquiry. Accordingly, we find that the district judge correctly determined the materiality of Devitt's allegedly false statements.

## EQUAL PROTECTION

Defendant next claims that he was denied equal protection of the law because he was indicted and convicted under 18 U.S.C. § 1623 (proscribing false material declarations before a grand jury or a court) rather than 18 U.S.C. § 1621 (perjury). Defendant argues that § 1621 has been construed to require that the falsity of each allegedly perjurious statement be proven either by the testimony of two witnesses or by the testimony of a witness, corroborated by other evidence. United States v. Rivera, 448 F.2d 757 (7th Cir. 1971).

§ 1623 specifically provides that the "two-witness rule" is not applicable to prosecutions thereunder:

"It shall not be necessary that such proof be made by any particular number of witnesses or by documentary or other type of evidence." 18 U.S.C. § 1623(e).

■ Defendant cites no case in support of the novel proposition that where conduct is proscribed by two or more separate criminal statutes, the government must elect to prosecute under the statute imposing the greatest burden of proof. As did the court in United States v. Ruggiero, 472 F.2d 599, 606 (2d Cir. 1973), we find defendant's contention in this regard entirely without merit. If anything, the government would be expected to proceed under § 1623 rather than § 1621, on the ground that a statute aimed at specific conduct prevails over an otherwise applicable general statute. See, United States v. Kahn, 472 F.2d 272 (2d Cir. 1973).

## BAD FAITH

Defendant argues that he was questioned by the grand jury regarding matters as to which the statute of limitations pertaining to substantive criminal prosecution had expired. Conceding that the grand jury may seek information which predates the applicable limitation period, United States v. Cohn, 452 F.2d 881, 883 (2d Cir., 1971), defendant nonetheless contends that, in the instant case, inquiry along these lines constituted bad faith conduct by the grand jury, since the information sought had already been obtained from sources other than the defendant. Defendant concludes that the sole purpose of calling him before the grand jury was "to try to get him to perjure himself" and that since the grand jury was not attempting to seek useful information in connection with its investigation, "it was not functioning as a competent entity."

We need not reiterate what has been said regarding the materiality of defendant's testimony. Suffice it to say that because truthful answers potentially could have led to a more fruitful investigation, the grand jury's inquiry cannot be viewed merely as a device to "get him to perjure himself". As the court stated in United States v. Cohn, supra, the scope of the grand jury's inquiry "is not limited to events which themselves may result in criminal prosecution, but is properly concerned with any evidence which may afford valuable leads for investigation of suspected criminal activity during the limitations period." 452 F.2d 881, 883. See also, United States v. Wesson, 478 F.2d 1180, 1181 (7th Cir. 1973).

The record in the instant case does not support defendant's assertion that the grand jury was not attempting to obtain useful information in furtherance of its investigation. Consequently, we find no basis for the speculative conclusion that the grand jury was acting in bad faith.

## SUFFICIENCY OF THE EVIDENCE

Devitt's allegedly false statements consisted of declarations that he had no knowledge of, or could not recall, any instance in which he had accepted money from any tavern owner while in the performance of his official duties as a Chicago police officer. Defendant argues that the evidence was insufficient to prove beyond a reasonable doubt that at the time he testified, he knew his answers to be false. Defendant relies heavily upon the fact that the incidents regarding which the government's witnesses testified pre-dated his testimony by as much as eight years, and intimates that defendant might have confused these incidents with those in which he accepted gifts legitimately from local businessmen for "meritorious service".

Whether defendant knew at the time he testified that his statements were false may be proven by circumstantial evidence, United States v. Nicoletti, 310 F.2d 359 (7th Cir. 1962), and "generally, a belief as to the falsity of testimony may be inferred by the jury from proof of the falsity itself." Young v. United States, 94 U.S.App.D.C. 54, 212 F.2d 236, 241 (1941). Although the testimony of the tavern owners did not directly establish that defendant actually remembered receiving money from them, their testimony did establish that the money was paid to the defendant while in the performance of his duties as a Chicago police officer. These witnesses testified in detail regarding veiled threats made by defendant to the effect that he would use his official position to their economic detriment unless he was paid a certain sum of money. Each witness testified that money was subsequently paid to the defendant. Defendant testified in his own behalf and denied accepting the money from any of the four tavern owners. On cross examination, he testified that if he had ever "shaken down any taverns", he would remember it. The jury apparently concluded that, contrary to his testimony at trial, defendant had accepted money

from the four tavern owners and that he remembered doing so. We find the circumstantial evidence here substantially greater than that presented in United States v. Clizer, 464 F.2d 121 at 125 (9th Cir. 1971), and viewed in the light most favorable to the appellee, sufficient to prove beyond a reasonable doubt that at the time defendant testified before the grand jury he knew his testimony to be false.

## CHICAGO POLICE DEPARTMENT RULE 51

Approximately one week before oral argument in the instant appeal, this court decided Confederation of Police, et al. v. Conlisk, et al., 489 F.2d 891 (7th Cir. 1973), holding Chicago Police Department Rule 51 unconstitutional. Rule 51 prohibited Chicago police officers from:

> "Failing to give evidence before the Grand Jury . . . when properly called upon to do so, or refusing to testify on the grounds that such testimony might incriminate the member, or refusing to sign a waiver of immunity when requested to do so by a superior officer."

Each of the plaintiffs in *Confederation of Police* was a police officer who had invoked the privilege against self-incrimination and refused to testify before a federal grand jury. Plaintiffs were thereafter either suspended or discharged for violating Rule 51.

After tracing the development of the law from the Supreme Court's decision in Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), to its decisions in Gardner v. Broderick, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968) and Uniformed Sanitation Men Ass'n, Inc. v. Commissioner of Sanitation, 392 U.S. 280, 88 S.Ct. 1917, 20 L. Ed.2d 1089 (1968), this court held that "Rule 51, to the extent that it denies police officers the privilege against self-incrimination where criminal prosecution may follow, is constitutionally invalid." 489 F.2d at 895.

■ Where a public employee testifies before a grand jury under the threat that his refusal to testify will result in disciplinary proceedings against him, the use of evidence so obtained against that witness in a subsequent criminal prosecution is improper. "[T]he protection of the individual under the Fourteenth Amendment against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office." Garrity v. New Jersey, 385 U.S. at 500, 87 S.Ct. at 620.

■ Nor may disciplinary action be taken against the witness for his refusal to testify, unless he is first advised that, consistent with the holding in *Garrity*, evidence obtained as a result of his testimony will not be used against him in subsequent criminal proceedings. Gardner v. Broderick, *supra*; Uniformed Sanitation Men Ass'n, Inc. v. Commissioner of Sanitation, *supra*.

In *Confederation of Police,* where the plaintiffs were suspended or discharged for refusing to testify after being first advised that anything they said *could* be used against them in subsequent criminal proceedings, the disciplinary action taken against them was held to be constitutionally infirm under the holdings in *Gardner* and *Sanitation Men*:

> "These discharges were clearly unconstitutional under the rulings of *Gardner* and *Uniformed Sanitation Men.* The IAD inquiry was in no sense an 'accounting of public faith' as the questions were not 'specifically, directly, and narrowly' related to official duties and the officers were not advised that their answers would not be used against them in criminal proceedings." Confederation of Police v. Conlisk, 489 F.2d at 895.

In the instant case, defendant argues that (1) at the time he testified Rule 51 was in force and effect and represented a clear threat of discharge or suspension if he refused to testify; (2) his testimony was therefore coerced in the same sense as was the testimony in *Garrity* because he was faced with the prospect of disciplinary action if he refused to testify; (3) the coerced testimony was

subsequently used against him as an essential part of the Government's case-in-chief, and was the sole basis for his conviction; and (4) since "the protection of the individual under the Fourteenth Amendment against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office", 385 U.S. at 500, 87 S.Ct. at 620, his conviction should be reversed.

 We believe defendant's reliance upon the aforementioned decisions is misplaced. Had defendant admitted extorting money from tavern owners, neither his testimony nor the fruits thereof could have been used against him in a subsequent prosecution. Garrity v. New Jersey, *supra*. Had he exercised his Fifth Amendment privilege, he could have attacked the legality of any subsequent disciplinary action against him on the basis of *Gardner* and *Sanitation Men*. But we find nothing in these decisions or in this court's holding in *Confederation of Police* which grants a witness before the grand jury the third alternative which, in substance, is proposed by the defendant in the instant case: the right under such circumstances to knowingly make a false material declaration while testifying under oath before a grand jury.

As the Second Circuit Court of Appeals stated in United States ex rel. Annunziato v. Deegan, 440 F.2d 304 (2nd Cir. 1971), upholding the conviction of a public employee for perjury based upon testimony obtained under threat of discharge:

"[A]ppellant was not prosecuted for *past* criminal activity based on what he was forced to reveal about himself; he was prosecuted for the *commission of a crime while testifying*, i. e., perjury. In short, while a public employee may not be put to the Hobson's Choice of self-incrimination or unemployment, he is not privileged to resort to the third alternative, i. e., lying." 440 F.2d at 306.

In sum, *Garrity* and its progeny do not proscribe the use, in a criminal prosecution under 18 U.S.C. § 1621 or § 1623, of a defendant's allegedly perjurious statements, even if obtained under circumstances such as those of the instant case. *Garrity* provides the witness with adequate protection against the government's use, in subsequent criminal proceedings, of information obtained as a result of his testimony, where his refusal to testify would form the basis for disciplinary action against him. *Gardner* and *Sanitation Men* provide the witness with a shield against such disciplinary action based upon his refusal to testify, in cases in which he refuses to do so, believing that his testimony or the fruits thereof can be used against him in subsequent criminal proceedings.

Together, these decisions provide adequate protection of the witness's Fifth Amendment rights. We find no reason or justification for extending this umbrella of protection to shield a witness against prosecution for knowingly giving false testimony.

The judgment of the district court is therefore affirmed.

Affirmed.