## No. 26573

## The People of the State of Colorado v. Joseph A. Concialdi

(554 P.2d 1094)

Decided September 27, 1976.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Edward G. Donovan, Solicitor General, Joe Losavio, District Attorney, Patricia W. Robb, Deputy, for plaintiff-appellee.

Seavy & Dreger, V. G. Seavy, for defendant-appellant.

*In Department.*

Opinion by MR. JUSTICE ERICKSON.

Joseph A. Concialdi was convicted of perjury in the first degree and sentenced to the penitentiary. 1971 Perm. Supp., C.R.S. 1963, 40-8-502.[1] On appeal, the sole issue is the sufficiency of the evidence to prove perjury in the first degree. We affirm.

---

[1] Now section 18-8-502, C.R.S. 1973.

The 1972 Pueblo County Statutory Grand Jury was investigating Joseph A. Concialdi to determine whether he was involved in the fixing of traffic tickets and had received money from Ronald Carreon to fix a ticket. *See People v. Concialdi,* 191 Colo. 564, 554 P.2d 1096, (announced contemporaneously with this decision).

▉ The prosecution's evidence established the following chain of events: Ronald Carreon, a seventeen-year-old boy, was given a traffic citation for speeding and reckless driving for operating a motorcycle at a speed of 76.7 miles per hour in a 30 mile per hour zone. He initially contacted Concialdi at the Branch Inn to get his assistance in fixing the ticket. Concialdi was paid an agreed-upon fee and subsequently caused a Pueblo police officer to destroy the outstanding copies of the traffic citations. The boy's parents thought that their son should face the charges and made their complaint known to Concialdi. Concialdi met with the boy's parents and told them that he had already divided the money among the police officers and that nothing could be done. The parents contacted the authorities and brought the illicit acts to the surface. When called before the grand jury, Concialdi denied his involvement in the transaction, and his testimony provided the basis for the charges in this case:

"Question: All right. Are you familiar with a person by the name of Ronald Carreon?

"Answer: This is the boy that was at the hearing, these last two hearings. Yes, I have seen him there.

"Question: You have seen him at the hearings, is that correct?

"Answer: Yes.

"Question: Have you seen him at any other time?

"Answer: No.

"Question: Okay. Then you did not see him in July of 1971?

"Answer: No.

"Question: Did you ever accept $115.00 from Ronald Carreon?

"Answer: No, never.

"Question: For fixing a traffic ticket?

"Answer: No.

* * * *

"Question: Have you ever told Ronald Carreon or any other person that you could fix a traffic ticket?

"Answer: Never.

"Question: And you never saw Ronald Carreon before the hearing?

"Answer: No.

"Question: He was never in your establishment?

"Answer: He might have been in there, but —

"MR. TURNER: Have you ever seen his mother or father, Mr. or Mrs. Carreon?

"THE WITNESS: No, never have.

"MR. TURNER: Did you ever have any conversation with them whatsoever?

"THE WITNESS: Never.

"Question: Mr. Concialdi, I am going to ask you once again: You understand, now, that you are subject to the laws of perjury?

"Answer: Yes.

"Question: And you are sworn to tell the truth?

"Answer: Yes.

"Question: Is it your testimony that you never had any conversation with Ronald Carreon?

"Answer: Yes, I never have.

"Question: Or his mother or his father?

"Answer: Never.

"Question: You do understand you are under oath?

"Answer: Yes.

\* \* \* \*

"Question: All right. Other than at the Civil Service Commission hearings did you ever come into contact with Mr. or Mrs. Carreone (sic) or their son Ronald Carreone (sic) before?

"Answer: Never.

"Question: Did you ever have a conversation with Mr. or Mrs. Carreone (sic) in your establishment?

"Answer: No.

"Question: Did you ever receive money from Ronald Carreone (sic) for the fixing of a traffic ticket?

"Answer: No."

The prosecution offered the grand jury transcript and called Ronald Carreon, Alfonso Carreon, and Wilma Carreon to prove the perjury charge. The foreman of the grand jury and other witnesses were also called. The burden cast upon the prosecution in a perjury case was described in *Anderson v. People*, 117 Colo. 342, 187 P.2d 934 (1947):

"[T]o convict of the crime of perjury, the offense must be proved by the testimony of two witnesses, or the testimony of one witness and by other independent and corroborating circumstances which is deemed to equal weight of the testimony of another witness."

Three witnesses testified to the falsity of Concialdi's assertions before the grand jury. The two-witness rule that is part and parcel of the prosecution's burden in a perjury case was met. *People v. Mazza*, 182 Colo. 166, 511 P.2d 885 (1973). The evidence was sufficient to establish Concialdi's guilt beyond any reasonable doubt of perjury in the first degree. *People v. Bennett*, 183 Colo. 125, 515 P.2d 466 (1973); *see United States v. Devitt*, 499 F.2d 135 (7th Cir. 1974).

Accordingly, we affirm.

MR. JUSTICE KELLEY, MR. JUSTICE GROVES, and MR. JUSTICE LEE concur.

