UNITED STATES of America, Plaintiff,

v.

Michael B. LAIKIN, Defendant.

No. 76–CR–130.

United States District Court,
E. D. Wisconsin.

Oct. 28, 1977.

Thomas E. Brown, John A. Nelson, Asst.
U. S. Attys., Milwaukee, Wis., for plaintiff.

Stephen M. Glynn, Shellow & Shellow,
Milwaukee, Wis., for defendant.

## MEMORANDUM AND ORDER

WARREN, District Judge.

The defendant has filed a motion for judgment of acquittal. The motion raises three issues which the Court must now decide: 1) the appropriate test for a Rule 29 motion at a trial to the Court; 2) the application of *United States v. Bronston,* 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973) to the facts of this case; and 3) the materiality of the declarations in question.

### THE TEST

The defendant argues that the test for the Court to apply in deciding the instant

motion is one of whether, based on the evidence thus far received, the Court would find the defendant guilty beyond a reasonable doubt. The case of *United States v. Camp,* 140 F.Supp. 98 (D.Haw.1956) is cited as authority. The Court declines to follow the *Camp* case for the reasons stated by Judge Palmieri in *United States v. Cascade Linen Supply Corp.,* 160 F.Supp. 565, 568 (S.D.N.Y.1958). The Seventh Circuit stated the appropriate standard in *United States v. Feinberg,* 535 F.2d 1004, 1008 (7th Cir. 1976), while dealing with a case "tried to the District Court, sitting without a jury."

The District Court in considering Feinberg's motion adopted the correct standard of taking the Government's evidence in the light or aspect most favorable to the Government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704 (1942); and *United States v. Velasco,* 471 F.2d 112, 115, (7th Cir. 1972). The same standard "applies to a case tried to a District Judge as well as to a case tried to a jury." *United States v. DeNiro,* 392 F.2d 753, 756 (6th Cir. 1968).

## LITERAL TRUTH

■ The defendant's position on the present motion is essentially that the questions posed to him during the grand jury testimony were inartfully phrased and his answers literally true. The defendant relies on *Bronston v. United States,* 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973).

The *Bronston* case held that the federal perjury statute does not reach a witness' answer that is literally true, but unresponsive, even assuming the witness intends to mislead his questioner by the answer, and even assuming the answer is arguably "false by negative implication." The Supreme Court placed a heavy burden on the interrogator to probe and press an evasive witness and "to bring the witness back to the mark, to flush out the whole truth with the tools of adversary examination." *Id.* at 358–59, 93 S.Ct. at 600.

The indictment centers around a conversation between the defendant and Mr.

Bloom and the defendant's responses to questions concerning this conversation at a grand jury hearing. In the former conversation with Mr. Bloom, the defendant, as the evidence presented by the Government shows, stated that he vaguely remembered a remark made by a Mr. Hansen at an earlier date. The defendant stated "Yeah, I told you that I, I recall vaguely, it didn't ya know, stand out like a red light, but I recall something to that effect."

In response to a question at the grand jury hearing which asked the defendant if he recalled Mr. Hansen's comment, the defendant volunteered the following answer:

No, I have—I was asked that question by Mr. Walsh when he was in my office about a month ago, something like that. And I really racked my mind and I have no specific recollection of the statements or the thought that you are asking about. *Some weeks prior to when I met with Mr. Walsh I was asked whether I had heard that, and—by Mr. Bloom, he had called me. And I said I really can't remember.*

The transcript of the grand jury testimony recounts specific questioning concerning the defendant's response to Mr. Bloom's question.

Q. You mentioned that Mr. Bloom made a call to you prior to Mr. Walsh's seeing you.

A. That is correct.

Q. And inquired as to the same thing that Mr. Walsh inquired as to.

A. He asked in substance whether I heard that statement made in my office, and I said I really don't know. It could have been. It could not have been. I truly don't know. It doesn't stand out, if that's what you are—.

\*   \*   \*   \*   \*   \*

Q. And he was—why was he calling you, did he say?

A. I don't recall specifically but I told him essentially what I told you, which was—what I told you now.

Q. Which was that you have no recollection of it one way or the other?

\*   \*   \*   \*   \*   \*

A. That's correct.

Q. It could have happened or it could not have happened; you just don't recall it?

A. That's right.

At page 36 of the Grand Jury Transcript:

Q. So, your recollection at least of that discussion with him was that you told him I just don't recall anything like that happening, could have or couldn't have, but I don't recall it.

A. That's the substance of it, yes.

Q. All right, and you are sure at least of that particular response, that that's what you told Bloom, that you don't remember one way or the other?

A. Like I said, I just couldn't recall specifically one way or the other.

When viewed in its entire context it is clear in the Court's opinion that the testimony of the defendant was not literally true. The defendant has argued that a "vague recollection" is literally equal to having "no specific recollection." If the matter had not been pressed by the United States attorney, the argument might have merit, but such was not the case. Even if the Court were to accept this argument, it would not result in dismissal.

The testimony of the defendant before the grand jury was that he told Mr. Bloom that: "I really can't remember; [I] have no recollection of it one way or the other; it could have happened or it could not have happened; I just couldn't recall specifically one way or the other." The United States attorney at the grand jury hearing pressed the issue as required by *Bronston.* He asked specific questions directed at the response the defendant gave to Mr. Bloom when asked whether he remembered the comment by Mr. Hansen. The response was that he told Mr. Bloom that he did not remember. The only time that he stated that he told him he had "no specific recollection" was at the very end of the inquiry into the subject. Under this factual situation, the terms "vague recollection" and "no specific recollection" cannot be equated.

The Court, therefore, finds that this is not a *Bronston* situation and the responses were not literally true.

### MATERIALITY

The Seventh Circuit had recently defined the term materiality as it is used in § 1621 of Title 18 U.S.C.

> [F]alse testimony before the grand jury is material if it "has the natural effect or tendency to impede, influence or dissuade the grand jury from pursuing its investigation." Merely potential interference with a line of inquiry is sufficient to establish materiality, regardless of whether the perjured testimony actually serves to impede the investigation.

*United States v. Howard,* 560 F.2d 281, 284 (7th Cir. 1977). *See, United States v. Devitt,* 499 F.2d 135, 137 (7th Cir. 1974); *United States v. Wesson,* 478 F.2d 1180 (7th Cir. 1973).

The inquiry is not, as counsel for the defendant has suggested, a determination of whether the particular question and answer has a direct bearing on the subject matter of the investigation. The question at issue here, *i. e.,* what the defendant told Mr. Bloom in a telephone conversation on February 25, 1976 relative to his recollection of a comment made by Mr. Hansen, does not have a direct bearing on the arson ring investigation. That does not, however, render it immaterial for purposes of the instant charge. The test of materiality is not whether the particular question and answer is directly relevant to the question of whether the criminal activity being investigated occurred or not; the test is whether the answer impedes or dissuades the investigation or cuts off a line of inquiry.

This approach is supported by the facts in *Devitt, supra,* and the Seventh Circuit's decision in that case. In *Devitt,* the grand jury was investigating police corruption. The defendant was a target of that investigation and was called before the grand jury. He was asked whether he "recall[ed], remember[ed], or [had] any knowledge, while in the performance of his duties

as a Chicago police officer, of ever having accepted any money from any owner, operator, employee or agent of any tavern or business." The court in dealing with the issue of materiality stated:

In the instant case, the grand jury was engaged in an investigation of possible extortionate conduct by certain Chicago Police Department personnel in violation of the Hobbs Act. Defendant's false declarations [i. e., that he had no recollection of accepting any money] potentially interfered with and impeded that investigation insofar as *defendant's false answers rendered further inquiry on the subject a meaningless exercise.* Had defendant answered honestly, the grand jury would have been advised that he had, in fact, accepted money from tavern owners while in the performance of his duties as a Chicago police officer. The grand jury would then have been in a position to determine the identity of other extortion victims, if any, who had not previously been identified. Potentially, honest responses to the questions asked of defendant might have led to a determination of the identity of other police officers, if any, engaged in similar practices.

499 F.2d at 139 (emphasis added).

It was the fact that the grand jury could not pursue the investigation with the defendant because of his false declaration which rendered his statement material.

In the instant case, the factual circumstances are one step removed from the *Devitt* case. The direct parallel with *Devitt* would be the issue of the defendant's recollection of Hansen's statement. A declaration of no recollection in that regard would clearly be material for it would cut off further inquiry into the circumstance surrounding the making of the statement or at least it would render such inquiry "a meaningless exercise." In the present case the defendant testified before the grand jury that he told a third party that he had no recollection of Hansen's comment. A truthful response, and the Court must assume that the actual response was false for purposes of determining materiality or the ex-

ercise would be purely academic, would have been that he did tell a third party that he had some recollection, though it be "vague," of the comment. Such a response would have led to further inquiry as to his recollection of the comment or why he stated at some time that he had heard it. In this regard, it should be remembered that the grand jury had evidence that the statement had been made and that the defendant was present when it was made. It also had evidence that the defendant acknowledged hearing the statement. The latter statement tends to support and corroborate the evidence that, in fact, the statement was made. If the defendant's acknowledgement to Mr. Bloom was false, it would be important for the grand jury to know that fact and to know why it was said so that all of these factors could be considered in the jury's deliberations. If the acknowledgement to Mr. Bloom was true, the inquiry would then proceed to the defendant's actual recollection as to the facts and circumstances surrounding Hansen's comment.

Nor does the fact that the grand jury had the tape recording of the Bloom telephone call render the declaration immaterial. This is clearly shown by the Second Circuit's decision in *United States v. Carson,* 464 F.2d 424, 436 (1972), in dealing with this precise issue.

[The defendant] misunderstands the purpose and operation of the perjury statute, 18 U.S.C. § 1621. "Essentially, the statute punishes lying under oath before a federal official or tribunal . . . . To be within the reach of section 1621, the lies must be material, which in this case means that 'the false testimony . . . [must have] a natural effect or tendency to influence, impede or dissuade the grand jury from pursuing its investigation.' " (citations omitted). The "natural effect or tendency" obviously flows from an assumption on the part of the speaker that the tribunal will believe what he says. On this basis materiality refers to the connection between the words said only by the accused and the objective of the investigation; other testimony which the grand jury has heard, except as it

may tend to delimit the objective of the inquiry, is therefore irrelevant to a determination of materiality. And we think it equally obvious that had appellant's false statements been believed, the natural effect would have been to impede the grand jury's investigation.

The Court, therefore, finds that the testimony of the defendant before the grand jury was material as it "potentially interfered with and impeded that investigation insofar as defendant's false answers rendered further inquiry on the subject a meaningless exercise." *Devitt*, 499 F.2d at 139.

■ One final point should be addressed. The defendant has argued that in making a determination as to materiality, the Court may not "speculate" as to what the grand jury might have done. Such a position is contrary to the cases decided on the issue and would render the test as delineated by the Seventh Circuit useless. The Court is dealing with the "natural effect or tendency" of the testimony and evaluating its "potential interference" with the investigation. These concepts fall in the area of "speculation." The Seventh Circuit recognized it as such in *Devitt* when it stated that: "Truthful answers to those questions *might well have* served as the foundation for a more 'fruitful investigation' into the broader subject matter of the grand jury's inquiry." 499 F.2d at 139.

## CONCLUSION

For the reasons stated above, the defendant's motion for a judgment of acquittal is DENIED.

So ordered this 28th day of October, 1977 at Milwaukee, Wisconsin.