Cory CHAN, Plaintiff,

v.

CITY OF CHICAGO, et al., Defendants.

No. 91 C 4671.

United States District Court,
N.D. Illinois,
Eastern Division.

June 29, 1995.

Susan Bogart, Law Offices of Susan Bogart, Chicago, IL, for Cory D. Chan.

Patricia M. Carroll–Smit, City of Chicago, Law Dept., Corp. Counsel, Chicago, IL, David J. Seery, City of Chicago, Law Dept., Chicago, IL, Susan S. Sher, Corp. Counsel, City of Chicago, Chicago, IL, for City of Chicago, IL., Leroy Martin, Edward S., Elgia Cook, Ronald T. Moran, John Guarnieri.

Patricia M. Carroll–Smit, City of Chicago, Law Dept., Corp. Counsel, Chicago, IL, for Chicago Police Dept.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Plaintiff Cory Chan is a Chicago policeman. At one time he was assigned to the Intelligence Section of the Chicago Police Department and the Chicago Terrorist Task Force, a joint undertaking between the Federal Bureau of Investigation and the Chicago Police Department. In order to be part of the Task Force, a police officer was required to have a top secret security clearance. In 1989, the United States was investigating alleged illegal gambling in the Chinatown section of Chicago. As part of that investigation, a grand jury subpoenaed Mr. Chan to testify. He was not a target of the investigation, and that fact was allegedly made known to Mr. Chan's supervisors at the Chicago Police Department and the FBI. Mr. Chan apparently asserted his privilege under the Fifth Amendment to the U.S. Constitution not to testify against himself during his grand jury appearance. Almost immediately thereafter, according to his complaint, he was removed from the Task Force and the Intelligence Section of the Chicago Police Department, and reassigned to patrol duties. Asserting that his removal was because of his assertion of his Fifth Amendment privilege, and that his action violated his rights under *Confederation of Police v. Conlisk*, 489 F.2d 891 (7th Cir.1973), *cert. denied sub nom. Rochford v. Confederation of Police*, 416 U.S. 956, 94 S.Ct. 1971, 40 L.Ed.2d 307 (1974), and *Lefkowitz v. Cunningham*, 431 U.S. 801, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977), Mr. Chan brought suit under 42 U.S.C. § 1983 against the City of Chicago and various individual police officials. The action was subsequently dismissed as to the City of Chicago. The case is set for trial in July of this year.

■ Mr. Chan seeks to compel disclosure of draft affidavits of an FBI agent, William Dyson. The first issue is whether plaintiff has forfeited his right to seek disclosure in this case by the passage of time. Plaintiff sought answers to interrogatories in a motion to compel heard by Magistrate Judge Bobrick in the summer of 1994. The existence of these affidavits was disclosed in the hearing on the motion. Although Judge Bobrick ruled from the bench, he apparently asked counsel to prepare a draft order. The order covered a number of topics and counsel waited until receiving a transcript of the hearing to prepare the draft. There is no doubt that she should have completed her draft order sooner than she did. Nevertheless, I have reviewed the order; it is detailed, and I can see why she chose to wait for a transcript. Apparently defendants then contributed to the delay in getting their proposed changes back to the plaintiff. The delay in entering the order is therefore explained. Following entry of the order, defendants contributed to further delay in the time they took to provide answers to the discovery. While I agree that plaintiff could have sought the affidavit by motion earlier, defendants also could have answered the discovery ordered by Judge Bobrick without waiting for the entry of a formal order. In sum, there has been delay on both sides. Plaintiff's motion is not barred by delay.

Defendants argue that the draft affidavits are protected by a joint defense privilege. According to defendants, they issued a subpoena in the summer of 1993 for the deposition of Mr. Dyson. Defendants say that thereafter they met with Mr. Dyson, who at the time was the Supervisory Special Agent of the Chicago Terrorist Task Force, and that they agreed on a joint defense. Although Mr. Chan's claim had been pending since 1991, and the FBI had never been sued, defendants say the FBI was concerned that it might become a defendant. In support of this claim, defendants have filed an affidavit from William Griffin, identified as

an attorney and an FBI agent with the responsibility of representing defendants in cases in which the FBI might be named as a defendant. Mr. Griffin represents that he was assigned to respond to defendants' subpoena in July, 1993, and that after numerous meetings, defendants and the FBI agreed on a joint defense strategy.

The rule is well established that parties facing a common litigation opponent may share privileged communications without waiving the privilege that each would hold. *E.g., United States v. McPartlin*, 595 F.2d 1321, 1336 (7th Cir.), *cert. denied*, 444 U.S. 883, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979). The courts have extended the privilege to potential defendants. *E.g., Schachar v. American Academy of Ophthalmology, Inc.*, 106 F.R.D. 187, 191 (N.D.Ill.1985), and cases cited therein. It would seem, however, that there must be some realistic basis for believing that someone will become a joint defendant before a joint defense privilege can arise. In this case, at the time the FBI and defendants allegedly entered their "joint defense" agreement, the case was between two and 2½ years old[1], and various discovery deadlines had been set, although extended. The essence of plaintiff's complaint was that he had lost income as a result of being terminated from the joint FBI–Chicago Police Task Force. While the complaint did not allege wrongdoing by the FBI, it was not inconceivable that if plaintiff had decided that the FBI was behind his demotion he might have attempted suit against the FBI or FBI agents. Since the courts freely allow amendment of pleadings, it was not improbable that plaintiff could have been allowed permission to amend his complaint to make such allegations. Accordingly, I find no basis for disregarding the FBI affidavit stating that it entered into a joint defense agreement in this case.

Plaintiff argues that defendants' agreement on a joint defense strategy came too late because it followed named defendants' Rule 45 deposition subpoenas. Plaintiff has not cited any rule that would support this argument and I have found none. Defendants could not have taken Mr. Dyson's deposition without notice to plaintiff, giving plaintiff the opportunity to cross-examine. But the deposition was never taken. Under plaintiff's logic, no one could ever talk to a witness that he had subpoenaed for trial simply because a subpoena had issued. Obviously, that is not the law, and there is no reason why a different rule would apply to the subpoena of a witness for a deposition.

The work product privilege under Rule 26, FED.R.CIV.P., does not provide absolute protection for the documents sought by plaintiff in this case. Plaintiff may obtain the documents upon a showing that he has substantial need of the materials and is unable without undue hardship to obtain their substantial equivalent by other means. Rule 26(b)(3). Plaintiff has not satisfied this criteria. Plaintiff could have issued his own subpoena for the deposition of Mr. Dyson. There is no reason to believe that Mr. Dyson would not have testified to the facts contained in the draft affidavits if subpoenaed by plaintiff. Discovery is now closed. Plaintiff may, of course, subpoena Mr. Dyson for trial if he chooses.

---

1. The documents submitted to me for *in camera* review indicate drafts of the affidavit were exchanged between July, 1993 and June, 1994.