The **UNITED STATES** of America, Plaintiff-Appellee,

v.

**Herbert J. COHN**, Defendant-Appellant.

No. 387, Docket 71-1884.

United States Court of Appeals, Second Circuit.

Argued Dec. 14, 1971.

Decided Dec. 17, 1971.

Certiorari Denied March 6, 1972.
See 92 S.Ct. 1196.

---

Jacob W. Friedman, New York City (Joseph Brill, New York City, of counsel), for appellant.

Thomas Fitzpatrick, Asst. U. S. Atty., New York City (Whitney North Seymour, Jr., U. S. Atty. for Southern District of New York, Richard J. Davis, Asst. U. S. Atty., New York City, of counsel), for appellee.

Before SMITH, KAUFMAN and MULLIGAN, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

Herbert J. Cohn appeals from a conviction for committing perjury (18 U.S.C. § 1621) and obstructing justice (18 U.S.C. § 1503). We affirm.

The indictment charged that he gave "false and evasive" testimony before a federal Grand Jury.[1] Cohn argues that his perjury conviction must be set aside because his testimony was not material to the grand jury investigation and there was no independent corroboration of the testimony of the principal government witness. In addition, he urges that false and evasive testimony will not support a conviction for obstructing justice.

On April 29, 1969, Cohn appeared under a formal grant of immunity before a federal Grand Jury investigating possible corruption among government and labor union officials. Confronted with an envelope addressed to his son on which there were penciled notes such as "indictment," "embezzlement," "5 Count GJ," and "Buffalino Father in Law," he gave the following pertinent answers in response to questions relating to the envelope:

Q. Mr. Cohn, I show you what has been marked Grand Jury Exhibit 1 and ask you whether you can identify that and whether you have ever seen it before? A. I don't recall any of this. I recognize the envelope. It was addressed to my son. I recognize the handwriting addressing it to my son as coming from my mother. It must have been a birthday card or something.

Q. Do you recognize the pencilled handwriting? A. There are several here.

Q. Do you recognize any of them? A. Offhand—I can't say that I do.

\* \* \* \* \* \*

Q. You never recall seeing that envelope? A. No. This is the first time I have seen it.

Q. You are sure of that? A. I don't recall ever seeing this thing. I don't know where it comes from or what it is all about.

Q. Does anything that is written on there refresh your recollection concerning anything you might know about? A. The only name that I see here, as I said, I knew was Buffalino. I can't make out this and I don't understand what the connection is, anyway.

Q. Well, aside from specific names, is there anything in the information that is written on there that would in any way jog your memory as to whether you know anything about what is written on there? A. I don't have any recollection of the envelope or any of this.

At trial, Herbert Itkin testified that Cohn was the middle man in late 1962 and early 1963 between himself and Morris Emmanuel, a Labor Department

---

1. A third count charged Cohn with perjury unrelated to this Grand Jury testimony. He was acquitted on this count.

official, in an illegal scheme to obtain information concerning pending federal labor racketeering investigations. Cohn, according to Itkin, gave him the envelope in question and told him that the penciled notes, written by his wife, contained the information he had received from Emmanuel. An FBI handwriting expert testified that some of the notes on the envelope were written by Cohn's wife and that others contained significant similarities to her handwriting. Cohn in his testimony at the trial denied that he had given the envelope to Itkin and reaffirmed his Grand Jury testimony.

■ We need not pause long in considering Cohn's challenge to the perjury conviction on the grounds that his testimony, relating as it did to events which had occurred prior to the limitations period, could not be a basis for indictment. He argues that as a matter of law it could not pertain to a "material matter." [2] The Grand Jury's scope of inquiry, however, is not limited to events which themselves may result in criminal prosecution, but is properly concerned with any evidence which may afford valuable leads for investigation of suspected criminal activity during the limitations period. "[T]he test of materiality is whether the false testimony has the natural effect or tendency to impede, influence or dissuade the grand jury from pursuing its investigation." United States v. Stone, 429 F.2d 138, 140 (2d Cir. 1970). Here, by concealing information relating to Emmanuel's suspected unlawful dealings in 1962 and 1963, Cohn may have hindered an investigation into Emmanuel's subsequent activities as a Labor Department official.[3]

■■ We also find lacking in merit Cohn's challenge to his conviction for perjury on the ground that the evidence did not satisfy the "two-witness rule." Perjury can be proven by two witnesses or by the testimony of one witness corroborated by independent evidence. See, e. g., United States v. Manfredonia, 414 F.2d 760, 764 (2d Cir. 1969); United States v. Marchisio, 344 F.2d 653, 664 (2d Cir. 1965). Itkin's testimony was sufficiently corroborated by the testimony of the FBI handwriting expert and the inferences to be drawn from the contested notes on the envelope, as well as by the very possession of this envelope by Itkin.

■ Cohn also argues that his testimony, even if it concealed information relevant and germane to the Grand Jury's functions,[4] will not support a conviction under 18 U.S.C. § 1503 for obstructing justice. Although the specific provisions of § 1503 relate to tampering, by corruption, threats or force, with sources of evidence extrinsic to the actor,[5] the final all-embracive language

---

2. One can be prosecuted for perjury only if he testifies falsely to "any material matter." 18 U.S.C. § 1621.

3. Emmanuel continued as an official of the Labor Department until 1968.

4. The district judge charged as a matter of law "that obstruction of justice includes concealing from a grand jury information relevant and germane to its functions."

5. 18 U.S.C. § 1503 provides:
   Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any witness, in any court of the United States or before any United States commissioner or other committing magistrate, or any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States commissioner or other committing magistrate, in the discharge of his duty, or injures any party or witness in his person or property on account of his attending or having attended such court or examination before such officer, commissioner, or other committing magistrate, or on account of his testifying or having testified to any matter pending therein, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, commissioner, or other committing magistrate in his person or property on ac-

proscribes all conduct which corruptly . . . influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, . . . " Cohn would have us limit the scope of this clause only to situations where the defendant interferes with other witnesses or documentary evidence. We rejected this argument under 18 U.S.C. § 1505, which tracks the language of § 1503 in the context of administrative proceedings, in United States v. Alo, 439 F.2d 751, 754 (2d Cir.), cert. denied, 404 U.S. 850, 92 S.Ct. 86, 30 L.Ed.2d 89 (1971):

> So restrictive a gloss, however, would produce the anomalous result that concealing information recorded in one's papers would constitute, as the appellant concedes, an offense under § 1505, but concealing data recorded in one's memory would not. No rational basis for differentiating between these two types of evidence has been suggested to us, and without a clear statement of contrary Congressional intent we cannot attribute such an arbitrary distinction to the legislature. Like the specific provisions which precede it [e. g., § 1503], § 1505 deals with the deliberate frustrations through the use of corrupt or false means of an agency's attempt to gather relevant evidence. The blatantly evasive witness achieves this effect as surely by erecting a screen of feigned forgetfulness as one who burns files or induces a potential witness to absent himself.

> Alo objects that such an interpretation of § 1505 will open an avenue for wholesale evasion of the so-called "two-witness rule" to which perjury convictions must conform. We disagree. It is true, that to convict Alo the jury had to conclude that he was lying when he professed loss of memory, but the gist of his offense was not

count of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, ob-

the falsehood of his statements, but the deliberate concealment of his knowledge.

We see no reason to depart from this reasoning.

The judgment of conviction is affirmed.

struct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both.