**UNITED STATES of America, Appellee,**

v.

**Terence Cecil STACEY, Appellant.**

**No. 77–1856.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 13, 1978.

Decided March 17, 1978.

---

2. *Jammer v. United States,* 438 F.Supp. 1087 (E.D.Mo.1977).

James M. Rosenbaum, Minneapolis, Minn., for appellant.

Daniel M. Scott, Asst. U. S. Atty., argued, Andrew W. Danielson, U. S. Atty., Minneapolis, Minn., on brief, for appellee.

* The Honorable William C. Hanson, Senior District Judge for the Southern District of Iowa, sitting by designation.

1. 31 U.S.C. § 1101(a) provides in pertinent part:
    [W]hoever, whether as principal, agent, or bailee, or by an agent or bailee, knowingly—
    (1) transports or causes to be transported monetary instruments—

    .    .    .    .    .

    (B) to any place within the United States from or through any place outside the United States    .    .    .
    in an amount exceeding $5,000 on any one occasion shall file a report or reports in accordance with subsection (b) of this section.
    31 U.S.C. § 1059 provides in pertinent part:
    Whoever willfully violates any provision of this chapter where the violation is—
    (1) committed in furtherance of the commission of any other violation of Federal law
    .    .    .
    shall be fined not more than $500,000 or imprisoned not more than five years, or both.
    21 U.S.C. § 957 provides in pertinent part:
    (a) No person may—

    .    .    .    .    .

    (2) export from the United States any controlled substance in schedule I, II, III, or IV, unless there is in effect with respect to such person a registration issued by the Attorney General under section 958 of this title.

Before MATTHES, Senior Circuit Judge, LAY, Circuit Judge, and HANSON,* District Judge.

MATTHES, Senior Circuit Judge.

Appellant Terence Cecil Stacey was indicted and convicted of violating 31 U.S.C. §§ 1059(1), 1101(a)(1)(B) by failing to report or file required reports on an amount of money in excess of $5,000 which he brought into this country in furtherance of a scheme to export marijuana.[1] We affirm.

On November 4, 1975, appellant and one David Iverson were stopped after driving through the closed port of entry at Noyes, Minnesota, on the Canadian border. Appellant and Iverson were each carrying over $5,000, which they refused to declare. The money was impounded, and appellant and Iverson were released.

Three weeks later, appellant was arrested in Minnesota on an unrelated matter.[2] While in custody, he confessed involvement

Appellant was not registered as an exporter of marijuana, a schedule I controlled substance. 21 U.S.C. § 812. Thus, appellant's activities were in violation of 21 U.S.C. § 960, which provides in pertinent part:
    (a) Any person who—
    (1) contrary to section    .    .    .    957 of this title, knowingly or intentionally imports or exports a controlled substance

    .    .    .    .    .

    shall be punished as provided in subsection (b) of this section.
    (b)(1) In the case of a violation under subsection (a) of this section with respect to a narcotic drug in schedule I    .    .    ., the person committing such violation shall be imprisoned not more than fifteen years, or fined not more than $25,000, or both. If a sentence under this paragraph provides for imprisonment, the sentence shall include a special parole term of not less than three years in addition to such term of imprisonment.
    Since appellant's failure to report the money in excess of $5,000 which he brought into this country was in furtherance of a violation of 21 U.S.C. §§ 957, 960, appellant also violated 31 U.S.C. §§ 1059(a)(1), 1101(a)(1)(B).

2. Appellant's arrest came on a federal warrant charging distribution of heroin. Appellant eventually entered into a plea bargain agreement regarding that offense.

in a conspiracy to export drugs to Winnipeg, Manitoba, and implicated several other people. The money confiscated from appellant at the Canadian border included proceeds from this smuggling activity.

In 1976, investigative reports concerning appellant and others were submitted to the U. S. Attorney's office in North Dakota in support of possible prosecutions for conspiracy to export marijuana from that state to Canada. Lack of evidence of North Dakota-based crimes prevented the initiation of any prosecution in that district, however.

The matter was referred to the U. S. Attorney's office in Minnesota in November of 1976. That office attempted to gain the cooperation of several Canadian defendants in order to demonstrate the suspected link between marijuana seized in Canada and the currency confiscated from appellant and Iverson. Those efforts failed, but in March, 1977, appellant was indicted on the basis of his confession. Sixteen months had elapsed since the seizure of appellant's money by the U. S. Customs Service.

In July of 1977, a hearing was held before U. S. Magistrate Earl R. Cudd on appellant's motions to dismiss the indictment for prejudicial delay and prosecutorial vindictiveness, and to suppress appellant's confession. A second hearing regarding appellant's motion to suppress was held in September of 1977 to investigate allegations made in an affidavit filed by appellant. The findings of fact and conclusions of law of the magistrate were adopted by the district court in denying appellant's motions. Trial was to the district court on stipulated facts. A formal judgment of guilt was entered on October 12, 1977, and appellant was sentenced to imprisonment for a period of six months to be served consecutively to a term which he was then serving.

Stacey contends on appeal (1) that the district court erroneously admitted his confession into evidence since it was obtained without a knowing and intelligent waiver of appellant's rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); (2) that the sixteen-month delay between the crime and the indictment was inherently prejudicial; and (3) that the indictment was the result of prosecutorial vindictiveness. We reject appellant's contentions.

I

The custodial interrogation which appellant now challenges was conducted by agents of the U. S. Customs Service and the Royal Canadian Mounted Police. After a full *Miranda* warning had been given, the following colloquy took place:

Q. Do you understand these rights?
Appellant: Yes.
Q. Do you wish to waive your rights to remain silent and your right to an attorney present at this time?
Appellant: I thought I was only going to be talking to him (Caldwell), the man from Canada.
Q. Well we're going to be talking, the three of us together because it applies to all three of us. Cause we worked this together. His violations tie in with our violations. I'll ask the questions. Sergeant Caldwell will ask the questions.
Q. We're both interested in this story _____ when you came back its as simple as that. Now there are things that are of interest to me and there are things that are of interest to him. Now some of them are the same and some of them are different.
Q. I have information that applies on this side of the border. Sergeant Caldwell has information that applies to the Canadian side of the border. The violation took place on both sides.
Q. Care to continue?
Appellant. Ya.

In the course of the subsequent conversation, appellant made a number of incriminating statements. He now claims that those statements were inadmissible because he failed to knowingly and intelligently waive his *Miranda* rights. We disagree.

A valid waiver need not be formalistic. *United States v. Marchildon,* 519 F.2d 337, 344 (8th Cir. 1975). "The critical question is whether the prosecution has borne

its heavy burden of effectively advising the defendant of his rights and demonstrating that the defendant knowingly and voluntarily declined their exercise." *Id.* The district court in the present case, on the basis of the hearings held by the U. S. Magistrate, found that appellant had knowingly and voluntarily waived his Fifth Amendment right to remain silent and his Sixth Amendment right to have an attorney present during questioning. That finding is not clearly erroneous and therefore must be upheld. *See United States v. Danley,* 564 F.2d 813, 815 (8th Cir. 1977); *United States v. Johnson,* 529 F.2d 581, 584 (8th Cir.), *cert. denied,* 426 U.S. 909, 96 S.Ct. 2233, 48 L.Ed.2d 835 (1976).

### II

Appellant's argument that the sixteen-month delay between the crime and the indictment was inherently prejudicial is completely without merit. No presumption of prejudicial delay arises in any prosecution brought within the period of the statute of limitations. *See United States v. Marion,* 404 U.S. 307, 322–23, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). Rather, the defendant must show *actual* prejudice from an *unreasonable* delay before he is entitled to dismissal of an indictment. *United States v. Partyka,* 561 F.2d 118, 122 (8th Cir. 1977); *see United States v. Lovasco,* 431 U.S. 783, 789–90, 796, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *United States v. Marion, supra,* 404 U.S. at 324–25, 92 S.Ct. 455. In the present case, appellant did not demonstrate any actual prejudice from pre-indictment delay. Moreover, the delay was occasioned primarily by the investigation of the drug-smuggling ring of which appellant was a member. Thus, even assuming some prejudice from pre-indictment delay, the government acted reasonably and in accordance with due process. *See United States v. Lovasco, supra,* 431 U.S. at 795–96, 97 S.Ct. 2044.

### III

In 1977, appellant and Iverson, through an attorney, sought return of the funds confiscated from them in November of 1975. The government concedes that appellant's efforts to recover the impounded money factored in the decision to seek an indictment in the present case. . Appellant urges that the indictment was thereby the result of vindictiveness on the part of the government and should have been dismissed.

In *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) and *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), the Supreme Court "establish[ed] a prophylactic rule imposing limits upon prosecutorial discretion [in] seeking new indictments or in conducting retrials when such actions carry with them the opportunity of retaliation for a defendant's exercise of *a statutory right that has due process implications.*" *United States v. DeMarco,* 550 F.2d 1224, 1227 (9th Cir. 1977), *cert. denied,* —— U.S. ——, 98 S.Ct. 105, 54 L.Ed.2d 85 (1977) (emphasis supplied). In the present case, however, appellant's demand for return of the impounded funds was not the "exercise of a statutory right that has due process implications" within the meaning of *DeMarco, supra.* The right appellant sought to assert was not one designed to assure receipt of a fair trial. The outcome of his attempt at recoupment in no way affected his ability to gain the process due him as a criminal defendant. Thus, *Pearce, Perry,* and their progeny are not directly applicable here. Nevertheless, we recognize the danger of allowing prosecutorial vindictiveness to manipulate our system of justice. *See Bordenkircher v. Hayes,* —— U.S. —— at ——, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978); *cf. MacDonald v. Musick,* 425 F.2d 373, 375–76 (9th Cir.), *cert. denied,* 400 U.S. 852, 91 S.Ct. 54, 27 L.Ed.2d 90 (1970) (impropriety of conditioning dismissal of criminal charge on defendant's stipulation of probable cause to arrest). The present case does not involve such manipulation, however.

Unlike those cases in which the possibility of vindictiveness is circumstantially apparent, *e. g., North Carolina v. Pearce, supra* (increased sentence upon reconviction following successful appeal); *Blackledge v.*

*Perry, supra* (felony indictment following appeal from misdemeanor conviction); *United States v. Jamison,* 164 U.S.App.D.C. 300, 306–10, 505 F.2d 407, 413–17 (1974) (criminal charge increased following successful defense motion for mistrial), the inference of vindictiveness on the instant facts is not strong. Prior to the indictment in this case, the government was engaged in a far-reaching investigative effort aimed at a drug-smuggling conspiracy involving appellant. The threat of prosecution was not used to coerce appellant into foregoing his civil remedies, nor was appellant ever given the indication that he would not be prosecuted for his part in the scheme. When the investigation ended appellant was indicted.

That appellant's demand for the return of the seized funds was one factor in the prosecutor's decision to indict does not compel reversal. *See United States v. Partyka, supra* at 124–25; *cf. Bordenkircher v. Hayes, supra,* —— U.S. at ——– ——, 98 S.Ct. 663 (desire to induce guilty plea valid consideration in bringing indictment). The U. S. Magistrate found that appellant's prosecution was not retaliatory in nature, the district court agreed, and we do not consider that finding to be clearly erroneous. *See United States v. Partyka, supra* at 125. Obviously the primary motivation for seeking appellant's conviction was his admitted guilt. Since appellant failed to demonstrate prosecutorial vindictiveness, the district court correctly refused to dismiss the indictment.

### IV

■ Although the prosecution in the case at bar was not found to have been motivated by vindictiveness, we take this opportunity to enter a brief caveat. The Supreme Court recently noted that: "There is no doubt that the breadth of discretion that our country's legal system vests in prosecuting attorneys carries with it the potential for both individual and institutional abuse."

*Bordenkircher v. Hayes, supra,* —— U.S. at ——, 98 S.Ct. at 669. The discretion afforded prosecuting attorneys is coupled with the awesome power of the indictment, which is virtually unchecked by the grand jury system. As Judge William J. Campbell put it: "Today, the grand jury is the total captive of the prosecutor who, if he is candid, will concede that he can indict anybody, at any time, for almost anything, before any grand jury." Campbell, *Eliminate the Grand Jury,* 64 J. Crim.L.C. & P.S. 174 (1973). The tremendous harm to both the individual and society which would attend a prosecutor's abuse of his discretionary authority compels us to caution that an indictment motivated by vindictiveness or retaliatory purpose on the part of the prosecutor will not withstand judicial scrutiny.

Finding no prejudicial error, we affirm.