### UNITED STATES of America, Appellant,

v.

### J. P. REED, Appellee.

### No. 80–1948.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 12, 1981.

Decided May 7, 1981.

---

George W. Proctor, U. S. Atty., Little Rock, Ark., for appellant.

Ray A. Goodwin (argued), Cathey, Goodwin, Hamilton & Moore, Paragould, Ark., for appellee.

Before ROSS, HENLEY and McMILLIAN, Circuit Judges.

McMILLIAN, Circuit Judge.

The United States (hereinafter the government) appeals[1] from an order of the District Court for the Eastern District of Arkansas granting defendant J. P. Reed's motion to dismiss an indictment charging him with one count of perjury in violation of 18 U.S.C. § 1623(a).[2] For reversal the government argues the district court erred in dismissing the indictment because (1) defendant was not substantially prejudiced by the preindictment delay and (2) the government did not intentionally delay seeking an indictment in order to gain a tactical advantage over defendant. For the reasons discussed below, we reverse the order of the district court, 496 F.Supp. 865, and remand for further proceedings.

Defendant served as the county judge of Greene County, Arkansas, from January 1, 1965, to December 31, 1972. In Arkansas the county judge is the chief administrative or executive official of the county and is responsible for approving and authorizing the payment of bills and accounts on behalf of the county. In 1978 a grand jury for the Eastern District of Arkansas was investigating local government corruption and heard testimony from Paul A. Baldwin, a vendor of corrugated metal pipe used in road construction. Baldwin testified that he had paid defendant and five other county judges bribes and kickbacks in return for their counties' business. On November 6, 1978, defendant appeared before the grand jury. Defendant was informed that he was a mere witness and that he would not be charged with a criminal offense if he answered truthfully. Defendant denied accepting bribes or kickbacks in his capacity as county judge.

Another vendor, Jack O'Roark, testified before the grand jury in March 1980, after having been granted immunity. O'Roark testified that he had paid defendant kickbacks in exchange for county business during 1972.

On June 16, 1980, some nineteen months after defendant appeared before the grand jury, the grand jury indicted defendant, charging him with perjury in denying that he had taken bribes or kickbacks from Baldwin and O'Roark during part of his tenure as county judge (from 1970 through 1972).[3]

1. 18 U.S.C. § 3731 provides in part:

In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

2. 18 U.S.C. § 1623(a) provides:

Whoever under oath (or in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information, including any book, paper, document, record, recording, or other material, knowing the same to contain any false material declaration, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

3. The indictment set forth the following testimony as the false material declaration:

Q. Mr. Reed, what is a kickback? Can you tell me what it is?
A. Well, it's bribery as I call it.
Q. All right, but how would you get it if you got one? I just want to make sure you know what it is. You know what a kickback is?
A. Well, it's when they give you—pay you to buy something. In other words, I would say.

At trial Baldwin testified that he had at least thirteen transactions with defendant from 1970 through 1972. Baldwin testified that of the four transactions for the sale of pipe, only one actual shipment was delivered to the county. Baldwin further testified that bogus invoices were prepared for the three remaining shipments, that the three shipments were in fact never delivered, and that, pursuant to a prior agreement with defendant, they split the money drawn from the county treasury to pay for the bogus invoices. Baldwin also testified that he paid defendant kickbacks in connection with the sale of a used grade and wheels for the grader to the county. O'Roark testified that he sold wood preservers and weed killers to the county and paid defendant a kickback in connection with five transactions. Defendant denied taking bribes or kickbacks from any vendors.

The jury was unable to reach a verdict after approximately two days of deliberation. The district court then declared a mistrial. Defendant filed a motion for judgment of acquittal and a motion to dismiss the indictment pursuant to Fed.R. Crim.P. 48(b).[4] At the hearing on the motions defendant testified that three potential defense witnesses[5] had died and that much exculpatory documentary evidence had either been lost or destroyed. The district court granted defendant's motion to dismiss the indictment and dismissed the motion for judgment of acquittal as moot.[6]

The district court found

merit in the defendant's contention that the filing of the indictment in June 1980 when the alleged bribes and kickbacks took place in 1970 through 1972 makes it virtually impossible for defendant Reed to prepare an adequate defense. The nature of the indictment requires Mr. Reed to defend against substantive charges on which the statute of limitations has already run [7] and, as a result, deprives him of a fair trial.

. . . .

While the charge contained in the indictment is perjury, to contend that Reed must only defend against a charge of making a false statement to the grand

---

. . . .
Q. Okay, but it's your testimony, you never received any kickbacks from either Mr. Baldwin or anyone else while you were in office?
A. No sir, not in no moneywise.
Q. While you were County Judge?
A. No, sir.

. . . .
Q. A minute ago you said not moneywise—are you qualifying that, did you receive other benefits from people?
A. No, sir.
Q. For providing goods?
A. I don't know what it could have been; no, sir.
Q. Property? Property?
A. No, sir.
Q. Gifts?
A. No, sir.

4. Fed.R.Crim.P. 48(b) provides:
If there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the district court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint.

5. Defendant testified that Clyde Bryant, who had been the county shop foreman during defendant's terms as county judge and as part of his job had kept a ledger of all county deliver-

ies, had died in December 1976 and the ledger had been lost; that S. G. Nelson, an equipment vendor, had died about a year before the hearing and would have testified that defendant had never solicited nor received any bribes or kickbacks; and that Orville J. Kersey, who had been the county bridge foreman and thus would have been able to testify about pipe deliveries, had died about a year before the trial and would have testified that defendant did not take bribes or kickbacks.

6. Although the district court noted that the court had had the benefit of presiding over the trial and "pointed out the paucity of resources available both to the prosecution and the defense after a lapse of 8 to 10 years," the district court dismissed the indictment on the grounds of oppressive delay and expressly dismissed the motion for judgment of acquittal as moot. *United States v. Reed,* 496 F.Supp. 865, 866–67 (E.D.Ark.1980).

7. 18 U.S.C. § 3282 provides: "Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed."

jury is unrealistic. In order to prove in 1980 at the time of trial that Reed perjured himself in 1978, the Government must prove that the defendant did, indeed, take bribes in 1970 through 1972. Since the Government was precluded by the statute of limitations from filing an indictment against the accused for taking bribes or kickbacks while serving as county judge, it would be very unfair to let the Government do indirectly what it cannot do directly.

. . . While the delay between the alleged criminal acts and the indictment is, on its face, 19 months, a long but no necessarily excessive period, the actual delay was not 19 months but 8 to 10 years. The situation herein is unreasonable, prejudicial, and violative of due process on its face.

*United States v. Reed*, 496 F.Supp. 865, 865–66 (E.D.Ark.1980) (footnote omitted). The district court noted that the five-year statute of limitations has not run on the perjury charge. *Id.* at 366 n.2. This appeal followed.

We note preliminarily that preindictment or preaccusation delay raises due process considerations under *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977), and *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). *See also United States v. Taylor*, 603 F.2d 732 (8th Cir.), *cert. denied*, 444 U.S. 982, 100 S.Ct. 487, 62 L.Ed.2d 487 (1979); *United States v. Tempesta*, 587 F.2d 931 (8th Cir. 1978), *cert. denied*, 441 U.S. 910, 99 S.Ct. 2005, 60 L.Ed.2d 380 (1979); *United States v. Stacey*, 571 F.2d 440 (8th Cir. 1978). "An indictment may be dismissed for preindictment delay if it appears that the delay was unreasonable and that it was prejudicial to the defendant in the presentation of his case." *United States v. Rogers*, 639 F.2d 438, 440 (8th Cir. 1981) (citations omitted).

■ We find no violation of defendant's right to due process by the delay of approximately nineteen months between defendant's testimony before the grand jury on November 6, 1978, and defendant's indictment for perjury on June 16, 1980. The nineteen-month preindictment delay did require further inquiry by the district court. However, even assuming that defendant demonstrated actual prejudice by the loss of two defense witnesses (both S. G. Nelson and Orville J. Kersey apparently died in 1979, after the alleged perjury but before the indictment), the government indicated that the delay was due to on-going investigations. Part of the delay was spent trying to obtain a grant of immunity in order to compel the testimony of O'Roark. "Investigative delay is fundamentally unlike delay undertaken by the government to gain tactical advantage over the defendant, and due process does not require a dismissal for pre-indictment investigative delay." *United States v. Matlock*, 558 F.2d 1328, 1330 (8th Cir.), *cert. denied*, 434 U.S. 872, 98 S.Ct. 218, 54 L.Ed.2d 152 (1977); *see also United States v. Lovasco, supra*, 431 U.S. at 790–95, 97 S.Ct. at 2048–51; *United States v. Hood*, 593 F.2d 293, 296 (8th Cir. 1979) ("Periods of active investigation by the government may not ordinarily be considered in support of a claim of unreasonable preindictment delay."). The record does not indicate that the delay was intentional or undertaken in order to gain a tactical advantage. *See United States v. Marion, supra*, 404 U.S. at 324, 92 S.Ct. at 465.

■ We turn next to the eight to ten years delay between the time of the alleged bribes or kickbacks (1970 through 1972) and the time of the indictment and trial (1980). While we share the district court's concern with the necessary impact of such a delay upon the availability and the memory of witnesses, we do not agree that this period of delay merits dismissal of the indictment. First, we do not find the *Marion* test for preindictment delay to be applicable to the pre-1978 delay. Under *Marion* the delay subject to due process scrutiny is preindictment or preaccusation delay, "the passage of time between crime and arrest or charge." 404 U.S. at 322, 92 S.Ct. at 464. Here, the pre-1978 delay occurred before the crime. Not only was the government unaware of any past wrongdoing by defendant until 1978 when Baldwin testified before the grand jury and implicated defendant in the bribery scheme, defendant

did not allegedly commit perjury until 1978. Thus, the pre-1978 delay cannot be characterized as preindictment delay under *Marion*.[8]

Second, as the district court recognized, defendant was charged with perjury, *not* with taking bribes or kickbacks. The alleged perjury occurred in November 1978; the indictment was returned on June 16, 1980, well within the five-year statute of limitations. 18 U.S.C. § 3282. As noted in *Marion*,

"the applicable statute of limitations . . . is . . . the primary guarantee against bringing overly stale criminal charges." Such statutes represent legislative assessments of relative interests of the State and the defendant in administering and receiving justice; they "are made for the repose of society and the protection of those who may [during the limitation] . . . have lost their means of defence." These statutes provide predictability by specifying a limit beyond which there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced.

404 U.S. at 322, 92 S.Ct. at 464 (citations and footnote omitted).

■ Third, we do not agree that the government should be barred from prosecuting defendant for perjury because the government must prove as part of its case foundation facts which constitute a crime for which the statute of limitations has expired. Here, the passage of time has affected both the defense and the government's case. As noted by the district court, two potential defense witnesses died the year before defendant was indicted and many documents were lost or destroyed. That the government must prove, beyond a reasonable doubt, as part of its *perjury*

prosecution, that defendant took bribes or kickbacks during 1970 through 1972, events now more than ten years in the past, only makes the government's case that much more difficult; it does not violate due process.

Finally, we note that "the grand jury may seek information which predates the applicable limitations period." *United States v. Devitt*, 499 F.2d 135, 140 (7th Cir. 1974), *cert. denied*, 421 U.S. 975, 95 S.Ct. 1974, 44 L.Ed.2d 466 (1975), *citing United States v. Cohn*, 452 F.2d 881, 883 (2d Cir. 1971), *cert. denied*, 405 U.S. 975, 92 S.Ct. 1196, 31 L.Ed.2d 249 (1972).

The Grand Jury's scope of inquiry . . . is not limited to events which themselves may result in criminal prosecution, but is properly concerned with any evidence which may afford valuable leads for investigation of suspected criminal activity during the limitations period. "[T]he test of materiality is whether the false testimony has the natural effect or tendency to impede, influence or dissuade the grand jury from pursuing its investigation."

*United States v. Cohn, supra*, 452 F.2d at 883, *citing United States v. Stone*, 429 F.2d 138, 140 (2d Cir. 1970). Here, by allegedly concealing the nature of his relationship with Baldwin (and other vendors), defendant may have interfered with further investigation by the grand jury. Defendant could not prevent the government from asking him questions before the grand jury about events which occurred before the statute of limitations period,[9] nor can the defendant bar a subsequent prosecution for perjury on those grounds. *Cf. United States v. Nickels*, 502 F.2d 1173, 1176 (9th Cir. 1974) (foundation events occurred in 1965–1966; defendant appeared before the

---

8. As discussed above, the preindictment delay (from defendant's appearance before the grand jury in 1978 until the indictment was returned in 1980) was attributable to on-going investigations and cannot be charged against the government.

9. [P]erjury is not a permissible way of objecting to the Government's questions. "Our legal system provides methods for challenging the Government's right to ask questions—ly-

ing is not one of them." Indeed, even if the Government could, on pain of criminal sanctions, compel an answer to its incriminating questions, a citizen is not at liberty to answer falsely. If the citizen answers the question, the answer must be truthful. *United States v. Wong*, 431 U.S. 174, 180, 97 S.Ct. 1823, 1826, 52 L.Ed.2d 231 (1977) (citations omitted).

grand jury in early 1970's, after the statute of limitations had expired; perjury conviction affirmed), *cert. denied,* 426 U.S. 911, 96 S.Ct. 2237, 48 L.Ed.2d 837 (1976); *United States v. Devitt, supra,* 499 F.2d at 140 (defendant was questioned by the grand jury regarding matters as to which the statute of limitations pertaining to substantive criminal prosecution had expired but which were material to the grand jury's inquiry; perjury conviction affirmed); *United States v. Cohn, supra,* 452 F.2d at 883 (defendant was allegedly middleman in illegal scheme to obtain information concerning pending federal labor racketeering investigations during 1962 and 1963; defendant appeared before grand jury in 1969; perjury conviction affirmed). *See also United States v. Wesson,* 478 F.2d 1180, 1181 (7th Cir. 1973) (grand jury was investigating illegal gambling businesses pursuant to statute which became effective in 1970; questions as to activities of grand jury witness in 1968 were material and could form basis for perjury prosecution).

We conclude that the district court erred in dismissing the indictment on the grounds of prejudicial preindictment delay.

Accordingly, the order of the district court is reversed and the case is remanded to the district court for further proceedings consistent with this opinion.