UNITED STATES of America,
Plaintiff–Appellee,

v.

Anthony F. VAP, Defendant–Appellant.

No. 87–1713.

United States Court of Appeals,
Tenth Circuit.

July 26, 1988.

John A. Claro (Robert J. Westbrook, with him on the brief), Claro & Johnston, Oklahoma City, Okl., for defendant-appellant.

David Seidman, Dept. of Justice, Washington, D.C. (Charles F. Rule, Asst. Atty. Gen., Kenneth G. Starling, Deputy Asst. Atty. Gen., John J. Powers, III, Dept. of Justice, Washington, D.C., Kent A. Gardiner and Alan A. Pason, Dept. of Justice,

Dallas, Tex., with him on the brief), for plaintiff-appellee.

Before LOGAN and MOORE, Circuit Judges, and ANDERSON, District Judge.*

LOGAN, Circuit Judge.

Defendant Anthony F. Vap appeals from his conviction on one count of knowingly making false material declarations under oath ("perjury") before a federal grand jury, in violation of 18 U.S.C. § 1623. The perjury occurred during a 1985 grand jury investigation (the "Evans investigation") of corruption that targeted Evans & Associates Construction Co. ("Evans") and several county commissioners in Oklahoma. Although not himself a target of that investigation, defendant was called as a witness.

The government alleged that defendant's grand jury testimony contained seventeen false declarations, including categorical denials of any personal awareness, solicitation, or receipt of cash payments or kickbacks during his decade-long tenure as a commissioner of Kay County, Oklahoma. For instance, defendant answered in the negative the following questions:

1. "Are you aware of any ... kickbacks to county commissioners ... during the time that you were a county commissioner?"
2. "Has anyone ever asked you or anyone ever approached you and offered a kickback to you?"
3. "Have you ever asked for any money?"
4. "[H]ave any of these gentlemen ever just given you a cash gift or any other thing of value?"
5. "Have you ever turned down an offer of money from anyone?"

*See* Indictment, Case No CR 86–266W (W.D.Okla. Nov. 18, 1986), ¶ 7 at 3, 4–5, 6, 9; I R. Tab 71 ¶ 7. Defendant also denied having received cash or offers of cash from several specific firms and individuals, including Lou Miller of Thurman Bridge Co. and Jimmy Litton of Oklahoma Road Material Co. At trial, the government produced evidence, which the jury accepted as proof of perjury, that defendant had been offered and had received kickbacks and other cash payments from four contractors.[1]

On appeal, defendant raises five assertions of error: (1) the district court should have dismissed the perjury indictment on grounds of preindictment delay; (2) defendant's false statements were not material to the grand jury's investigation and therefore do not satisfy the statutory definition of perjury; (3) the district court committed reversible error by conducting its hearing on materiality in front of the petit jury; (4) the government's evidence was insufficient to establish guilt; and (5) the government violated defendant's right to exculpatory evidence under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). We reject each of the claims and affirm defendant's conviction.

I

Defendant complains that the federal government, which apparently learned of defendant's involvement with kickbacks in the course of a 1981 state grand jury investigation into corruption among county commissioners, improperly delayed indicting defendant on charges relating to the kickbacks until 1986. He makes a due process argument that this lengthy delay—five years after learning of the crimes, and as many as eleven years after the crimes occurred—prejudiced him by making it difficult or impossible to obtain certain exculpatory evidence and to construct an accurate account of the events of nearly a decade ago. As he notes, a defendant's due process rights may be violated even by indictments brought within the statute of limitations, if the indictments are delayed because "of deliberate action by law enforcement personnel designed to gain a tactical

---

* The Honorable Aldon J. Anderson, Senior United States District Judge for the District of Utah, sitting by designation.

1. All parties agree that, by the time of defendant's appearance before the 1985 grand jury, the statute of limitations had expired for the illegal kickbacks about which defendant was questioned.

advantage resulting in actual prejudice to the accused, thereby depriving him of his right to a fair trial." *United States v. Comosona*, 614 F.2d 695, 696 (10th Cir. 1980) (per curiam).

One problem with defendant's preindictment delay argument is that the alleged predicates for preindictment delay are the pre–1981 acts of solicitation and/or receipt of kickbacks, but the indictment he challenges is for the 1985 crime of perjury. Thus, much of the complained-of delay took place *before* defendant committed the crime for which he was indicted. Defendant attempts to remove this infirmity by arguing that "[f]or all practical purposes, this perjury charge was identical to a charge of receiving kickbacks 'on the merits' during 1977 and 1978. No matter how the prosecutorial pie is cut, it has remained in the oven for eight (8) long years." Appellant's Opening Brief at 8.

Defendant's theory that the perjury charge is a surrogate for the stale corruption crimes has been squarely rejected by the only circuit to consider it. In *United States v. Reed*, 647 F.2d 849 (8th Cir.1981), the government brought a perjury indictment nineteen months after the alleged perjury, but almost ten years after the kickbacks and bribes about which the defendant allegedly had lied. The Eighth Circuit refused to calculate the length of preindictment delay from the date of the alleged kickbacks and crimes, reasoning that the defendant was charged with perjury, a crime distinct from and committed long after the crime of accepting bribes or kickbacks. *Id.* at 852–53. The court stated, "That the government must prove, beyond a reasonable doubt as part of its *perjury* prosecution, that defendant took bribes or kickbacks during 1970 through 1972, events now more than ten years in the past, only makes the government's case that much more difficult; it does not violate due process." *Id.* at 853 (emphasis in original). The court also noted that grand juries permissibly may inquire into events material to the investigation even if those events are no longer subject to criminal charges because of the running of the statute of limitations, and that committing per-

jury is not a permissible way of challenging the government's right to ask questions. *Id.* & 853 n. 9 (quoting *United States v. Wong*, 431 U.S. 174, 180, 97 S.Ct. 1823, 1826, 52 L.Ed.2d 231 (1977)).

■ We consider the reasoning of *Reed* persuasive and adopt it as the rule in our circuit. Preindictment delay must relate to the time between the commission of the crime and indictment for that same crime. The delay here of one year between the perjury and the indictment does not constitute a denial of due process.

Defendant attempts to distinguish *Reed* by asserting that there the government was unaware of any wrongdoing by defendant until the time of the perjury, whereas here the government knew of the defendant's wrongdoing much earlier. But this is a distinction without a difference. As in *Reed*, the perjury to which the claim of preindictment delay relates had not been committed until the grand jury testimony.

Nor has defendant made a *"prima facie* showing of fact ... that this delay was intentionally or purposely designed and pursued by the Government to gain some tactical advantage over or to harass him...." *Comosona*, 614 F.2d at 696–97. Defendant presents a creative theory that the government delayed for five years bringing criminal charges related to the actual kickbacks so that it would have an excuse to return exculpatory records to vendors, who in turn would destroy them. Defendant admits, however, "that he has no concrete evidence that the government's delay in this matter was intentional and for the sole purpose of giving it a tactical advantage over him." Appellant's Opening Brief at 17. We thus reject the claim of prejudicial preindictment delay.

## II

■ Defendant next contends that his statements, even if false, did not constitute perjury because they were immaterial to the grand jury's investigation. Materiality is a necessary element of the crime of perjury, as 18 U.S.C. § 1623(a) prohibits one from "knowingly mak[ing] any false

*material* declaration" before a grand jury. *Id.* (emphasis added). Testimony is material if "it had a tendency to influence, mislead or hamper the grand jury in a matter which it had the authority to investigate...." *United States v. Larranaga,* 787 F.2d 489, 494 (10th Cir.1986). The testimony need not have an actual effect; it merely must be " 'capable of influencing' " the grand jury. *United States v. Girdner,* 773 F.2d 257, 259 (10th Cir.1985) (quoting *United States v. Masters,* 484 F.2d 1251, 1254 (10th Cir.1973)), *cert. denied,* 475 U.S. 1066, 106 S.Ct. 1379, 89 L.Ed.2d 605 (1986). Because the materiality of a false declaration is an issue of law, *Larranaga,* 787 F.2d at 494 & n. 1; *cf. Sinclair v. United States,* 279 U.S. 263, 298–99, 49 S.Ct. 268, 273–74, 73 L.Ed. 692 (1929), it is reviewable de novo on appeal.

■ In this case, defendant contends that the questions put to him during the grand jury investigation bore no logical relationship to the subject matter of the investigation. As defendant characterizes the investigation, it concerned solely Evans' allegedly corrupt activities; yet defendant was asked "questions relating to kickbacks *totally unrelated* to Evans." Appellant's Opening Brief at 20 (emphasis in original). Defendant further notes that the questions concerned activities for which criminal charges no longer could be brought: a 1981 state grand jury had decided not to indict defendant regarding these activities, and the 1985 federal grand jury could not indict defendant because the statute of limitations had run. Finally, the contractors about whom defendant lied not only were unconnected with Evans, but also could not be indicted by the grand jury because they had already been convicted for the activities about which defendant lied. For all of these reasons, defendant argues that the questions which he answered untruthfully were logically and legally immaterial to the Evans investigation.

The district court found, and we agree, that the scope of the investigation was considerably wider than defendant admits. By the time of defendant's 1985 testimony, the grand jury investigation included "whether persons or companies engaged in the business of selling highway construction materials, equipment or supplies to county commissioners had paid any money, kickbacks or bribes to county commissioners in connection with such sales." I R. Tab 59 at 2. The investigation had specifically focused on activities in defendant's jurisdiction, Kay County, during 1980 and 1981. Defendant's blanket denials before the grand jury of ever receiving kickbacks from Evans or any of the other contractors might have led the grand jury to refrain from pursuing its investigation much further. Also, several vendors testified before the grand jury even after Evans was indicted; truthful testimony by defendant about kickbacks he received from those vendors might well have affected their credibility with that grand jury on matters it was investigating. Because defendant's false testimony had the capacity to influence the grand jury in matters properly before it, the false testimony was material.

### III

Defendant next argues that because the materiality of an allegedly perjurious statement is exclusively for the court, the hearing on materiality should have been held outside the jury's presence. The district court, however, denied defendant's motion to conduct a pretrial hearing on materiality and instead conducted the materiality hearing in front of the jury.

■ This circuit has not faced this specific issue until now. But the others that have considered it have held, in the words of the Fifth Circuit, that "[t]he issue [of materiality] is a question to be decided by the court and is not an issue for the jury to determine. Since this is so, evidence bearing solely on materiality should be received outside the presence of the jury." *United States v. Damato,* 554 F.2d 1371, 1373 (5th Cir.1977) (footnotes omitted). *Accord United States v. Hansen,* 583 F.2d 325, 333 (7th Cir.), *cert. denied,* 439 U.S. 912, 99 S.Ct. 283, 58 L.Ed.2d 259 (1978); *United States v. Jackson,* 640 F.2d 614, 617 (8th Cir.), *cert. denied,* 454 U.S. 1057, 102 S.Ct. 605, 70 L.Ed.2d 594 (1981); *United States*

*v. Dipp,* 581 F.2d 1323, 1328 (9th Cir.1978), *cert. denied,* 439 U.S. 1071, 99 S.Ct. 841, 59 L.Ed.2d 37 (1979); *United States v. Dennis,* 786 F.2d 1029, 1041 (11th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1973, 95 L.Ed.2d 814 (1987). *Cf. United States v. Albergo,* 539 F.2d 860, 864–65 (2nd Cir.) (dissenting opinion; argument not addressed by majority, *see id.* at 863), *cert. denied,* 429 U.S. 1000, 97 S.Ct. 529, 50 L.Ed.2d 611 (1976).

■ Courts have permitted juries to hear evidence on materiality only if that evidence also is relevant to another issue properly before the jury. *See Harrell v. United States,* 220 F.2d 516, 520 (5th Cir. 1955); *United States v. Langella,* 776 F.2d 1078, 1081 (2nd Cir.1985), *cert. denied,* 475 U.S. 1019, 106 S.Ct. 1207, 89 L.Ed.2d 320 (1986). The government in this case, however, does not allege that any of the evidence on materiality was relevant to proper jury issues and advances no other reason for a jury to remain in the courtroom during a materiality hearing. We join the aforementioned circuits and adopt the aforementioned quotation from *Damato* as the rule of the Tenth Circuit. The district court thus erroneously conducted the materiality hearing in front of the jury.

The conviction must be reversed and the case remanded for a new trial, unless this error was harmless. *See* Fed.R.Crim.P. 52(a); Fed.R.Evid. 103(a); *United States v. Scafe,* 822 F.2d 928, 936 (10th Cir.1987). This court has stated that "(p)erhaps the single most significant factor in weighing whether an error was harmful is the strength of the case against the defendant." *United States v. Williams,* 445 F.2d 421, 424 (10th Cir.), *cert. denied,* 404 U.S. 966, 92 S.Ct. 342, 30 L.Ed.2d 286 (1971) (quoting C. Wright, *Federal Practice & Procedure: Criminal,* § 854). Defendant claims prejudice in that the jury heard part of the Evans indictment, which was relevant only to materiality and not to guilt. Defendant describes the Evans indictment as containing several prejudicial allegations:

> "[T]hat indictment ... alleged that Evans utilized blandishments, in addition to money, in an attempt to corruptly influence public officials. The indictment alleges that Evans seduced public officials not only with money, but also with vacations to Hawaii, hunting trips in the Dakotas, and fishing trips in Canada (*some* of which rugged expeditions were alleged, by the way, to have been 'full service' outings complete with 'a woman and motel room' at the disposal of the indoor sportsman who had grown weary of outdoor pursuits.) See: Evans Indictment, ¶ 3e."

Appellant's Opening Brief at 31 (emphasis in original). He argues that the "government evidence of 'materiality' was horribly prejudicial to the Defendant on matters collateral to those which the jury *was* to decide," *id.* at 26 (emphasis in original), and that reading it to the jury requires reversal. We conclude, however, after reviewing the record, that the evidence of guilt was sufficiently strong to render harmless any prejudicial effects of improper evidence at the materiality hearing.

The government presented convincing testimony that defendant, despite his denials in front of the grand jury, was offered and received cash payments from several contractors. The owner of Thurman Bridge & Block Co. testified that he provided cash to his salesmen over a period of approximately four years before 1981 for the explicit purpose of giving kickbacks to defendant. And one of his salesmen, Louis Miller, testified that he paid the kickback money directly to defendant on most sales for approximately three and a half years. Jim Litton, an employee of Oklahoma Road Materials Co., testified that he gave defendant cash payments on a regular basis as business was done for an unspecified period of time. At the time of the payments, Litton said he considered them campaign contributions; later, upon learning the legal definition of a kickback, he conceded that the payments were kickbacks. A salesman for Bert Smith Machinery, Inc. also testified that defendant solicited and received a $500 "campaign contribution" in return for defendant's assistance in the sale of equipment to a fellow county commissioner. An employee of Stewart Supply Co. admitted "paying some money to [defendant] ... to take his wife to dinner." III R. 162. In his grand jury testimony,

defendant denied being offered money or kickbacks by, or receiving it from, any of these contractors.

Further, the government's case against defendant needed and probably received very little help from the evidence adduced at the materiality hearing, which was only a small part of the trial. Conceivably, the jury, after viewing the Evans indictment, might have linked defendant to the charges contained therein, especially since the alleged Evans corruption involved other Kay County officials. The government, however, did not allege that defendant was involved in corrupt activities with Evans, and testimony at trial explicitly showed defendant's noninvolvement. Further, the Evans indictment, which was drawn narrowly and named only three Kay County officials, did not name defendant. The indictment in no way implied that any unnamed Kay County officials were involved. Thus, we believe that it is highly unlikely that the jury could have used the Evans indictment to reach prejudicial conclusions about defendant.

Viewing the impact of the Evans indictment in its most damaging light, some jurors might have believed that the kickbacks alleged therein—free vacations and sexual gratuities—constituted a higher form of corruption than cash gifts and "campaign contributions." But even if the jury linked the allegations in the Evans indictment to defendant, that linkage would have provided merely cumulative evidence that various favors were sought or received. Such cumulative impact is harmless, in light of the strength of the proper evidence of inducements.

## IV

■ Defendant next contends that the government failed to prove that he lied about receiving kickbacks, since there was insufficient evidence to support a finding of a *quid pro quid* in his dealings with contractors. A *quid pro quid*—the conscious exchange of value for official favoritism—is a necessary element of bribery-type crimes such as kickbacks. *See United States v. Johnson*, 621 F.2d 1073, 1076 (10th Cir.1980). A showing of *quid pro quo* thus would be necessary if the truth of

defendant's statements before the grand jury depends on whether the transactions were kickbacks or merely gifts and campaign contributions. Defendant complains of the lack of direct evidence "of any prearranged *quid pro quo* agreement to pay kickbacks on sales made to Vap's district...." Appellant's Opening Brief at 38.

■ We reject defendant's argument for two reasons. First, the lack of direct evidence is not fatal because a *quid pro quo* can be established by circumstantial evidence. Naturally, illegal schemes rarely will be memorialized in formal agreements or other documents; thus, to have a conspiratorial agreement, we have ruled that "[i]t is enough that the participating parties have a tacit understanding based upon a long course of conduct." *United States v. Beachner Construction Co.*, 729 F.2d 1278, 1283 (10th Cir.1984). Tacit understandings can be established by circumstantial evidence. *See United States v. Zang*, 703 F.2d 1186, 1191 (10th Cir.1982), *cert. denied*, 464 U.S. 828, 104 S.Ct. 103, 78 L.Ed.2d 107 (1983). Kickback arrangements possess the essential characteristics of conspiratorial agreements and are susceptible of the same proof. The aforementioned testimony of representatives of four Oklahoma contracting firms, *see* Part III, *supra*, established a strong circumstantial case that a scheme existed whereby cash was given to defendant in conscious exchange for his official favoritism. We hold that sufficient evidence existed to support a finding that a *quid pro quo* existed.

Second, defendant lied about transactions of which a *quid pro quo* was not a necessary element. In front of the grand jury, defendant specifically denied that any of the contractors had "ever just given [defendant] a cash gift or any other thing of value[.]" I R. Tab 71, Indictment ¶ 7 at 6. Later, defendant replied to the question, "Have you ever turned down an offer of money from anyone?" by declaring, "I have never been offered." *Id.* at 9. To find that defendant's denials in response to these questions were false, the jury need not first find that a *quid pro quo* existed. Thus, defendant's argument about the suf-

ficiency of the evidence, even if valid, would not disturb the conviction.

## V

 Defendant alleges several violations of the rule of *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963), that a defendant must be shown all exculpatory evidence in the government's possession. One violation allegedly occurred when the government in 1984 returned numerous vendor records to the four contractors, who in turn destroyed the records before defendant's trial. Defendant argues that by allowing the contractors to take control of and destroy these records, the government violated its duty to preserve exculpatory evidence before its disclosure to a defendant. *See United States v. Bryant,* 439 F.2d 642, 651 (D.C.Cir.1971). We reject this claim. Defendant did not commit the crime for which he was convicted until November 1985, a year after the government returned the records. As the Supreme Court has noted, "[w]hatever duty the Constitution imposes ... to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense." *California v. Trombetta,* 467 U.S. 479, 488, 104 S.Ct. 2528, 2534, 81 L.Ed. 2d 413 (1984) (footnote omitted). We cannot hold that the government reasonably could have expected the vendor records to play a role in the defense of a crime not yet committed.

Defendant next complains that the government did not turn over FBI summaries of the aforementioned vendor records in a timely fashion. There is no merit to this argument. Defendant does not deny that he received all extant summaries eighteen days before trial and that he used them at trial. *"Brady* is not violated when the Brady material is available to defendants during trial." *United States v. Behrens,* 689 F.2d 154, 158 (10th Cir.), *cert. denied,* 459 U.S. 1088, 103 S.Ct. 573, 74 L.Ed.2d 934 (1982).

 Finally, defendant contends that the government failed to preserve an exculpatory tape recording of a telephone conversation between defendant and the FBI. That conversation, had it actually been re-corded, would have been on a specific cassette. Because the particular conversation, if indeed it was taped, was not audible on that cassette without technical enhancement, the government offered to send the cassette to the FBI laboratory for such enhancement or a definitive determination that the conversation had not been recorded. Since the laboratory analysis would have delayed the trial for an indefinite period, the government moved for a nonprejudicial dismissal of the indictment pending the analysis. In opposing this motion, defendant agreed "to accept the *existing* tape, *properly* identified, in its *present* condition as fulfillment of the Government's *Brady* duty with regard to that one *specific* piece of exculpatory evidence." Defendant's Response to Government's Motion to Dismiss Indictment Without Prejudice, Doc. No. 56 at 6 (emphasis in original). We conclude that defendant thus knowingly and voluntarily waived the right to review any recording of this particular conversation. He thus cannot raise a *Brady* objection on appeal.

AFFIRMED.