FRATERNAL ORDER OF POLICE, LODGE NO. 5, Hurst, Robert S., Individually as resident and taxpayer of the City of Philadelphia and in his capacity as President of Fraternal Order of Police, Lodge No. 5, Doe, John, Police Officer, individually and in his capacity as a uniformed, sworn Civil Service Employee of the Philadelphia Police Department assigned to the Major Investigations Division, Ethics and Accountability Division and Internal Affairs Division of the Philadelphia Police Department, Doe, Jane, individually as the spouse of Police Officer, Doe, John

v.

CITY OF PHILADELPHIA, Tucker, Kevin, M., individually and in his capacity as Police Commissioner Philadelphia Police Department, Mitchell, Robert, individually and in his capacity as Police Inspector and Commander, Special Investigations Bureau of Philadelphia Police Department, and McLaughlin, Edward, individually and in his capacity as Police Inspector and Commander, Internal Affairs Division Philadelphia Police Department City of Philadelphia.

Appeal of Kevin M. TUCKER, Robert Mitchell and Edward McLaughlin, Appellants.

No. 88–1073.

United States Court of Appeals, Third Circuit.

Argued June 24, 1988.

Decided Oct. 13, 1988.

Maureen E. Laflin (argued), Ralph J. Teti, Chief Deputy City Solicitor, City of Philadelphia, Law Dept. Philadelphia, Pa., for appellants.

Anthony J. Molloy, Jr., Jane R. Goldberg (argued), Mozenter, Molloy & Durst, Philadelphia, Pa., for appellees.

Before GIBBONS, Chief Judge, HIGGINBOTHAM, Circuit Judge, and ROTH, District Judge.*

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

This appeal concerns a questionnaire sought to be instituted by the City of Philadelphia and its police department to assist that department in selecting applicants to its Special Investigations Unit (SIU). The district court permanently enjoined the City and its police officials from requiring SIU applicants to answer certain questions to which the Fraternal Order of Police, Lodge 5 (FOP), objects. The district court held that the proposed use of the questionnaire violates the applicants' right to be free from compelled self-incrimination, guaranteed by the fifth amendment to the United States constitution. We do not agree that a fifth amendment violation exists, and will reverse.

## I.

This is the third appeal by the City of Philadelphia in this case. We have previously described the purposes and inception of the SIU and the questionnaire, *see Fraternal Order of Police, Lodge 5 v. City of Philadelphia*, 812 F.2d 105, 107–108 (3d Cir.1987) (hereinafter *"FOP I"*), and find it unnecessary to recount these facts in the same detail here. However, we cannot proceed without providing some duplicative background about the facts and history of this case.

The SIU is a relatively new unit of the Philadelphia Police Department, established on January 31, 1986 by the Police Commissioner in response to a recent history of corruption within the department. The SIU's purpose is to centralize control over internal corruption investigations, internal disciplinary investigations and vice investigations. These responsibilities were formerly met by the Major Investigations Division (MID), the Ethics Accountability Division (EAD), and the Internal Affairs Bureau (IAB). Because of the sensitivity of the work of the new unit and the need to " 'bring integrity back to this City and this police department,' " *FOP I*, 812 F.2d at 108, the Commissioner developed a stringent screening process for selecting officers to serve in the SIU, announcing at the outset that applicants would be required to submit to a polygraph examination and personal interview before acceptance. Shortly after the Commissioner's initial announcement, the Police Department issued a document, referred to as the Fact Sheet, that set forth in detail the procedures to be used in the SIU application process. In *FOP I*, we described that Fact Sheet as follows:

> The Fact Sheet states that SIU applicants must complete and certify a questionnaire, attached thereto, and must undergo an initial personal interview, a background investigation, a polygraph examination, and a final personal interview. The questionnaire contains thirty-nine questions seeking personal information about the applicant and his or her family. The Fact Sheet states:
>
>> All answers to this Questionnaire are considered confidential and will not be disclosed to any agency or unauthorized person, nor will they be made part of any departmental record or used against you in any manner in your future career with the department.
>
> App. at 536. In addition, the Fact Sheet informs applicants that they may withdraw from the application process at will with no effect on their 'future career in the Department,' and that upon withdrawal, their 'questionnaire, and all other related paperwork will be destroyed.' App. at 534.

*FOP I*, 812 F.2d at 108. The Fact Sheet further advises that current employees in the MID, the EAD, and the IAB must complete the questionnaire and submit to a polygraph examination. It states that some members of these units will be trans-

---

* Honorable Jane R. Roth, United States District Judge for the District of Delaware, sitting by designation.

ferred temporarily into the SIU, in order to enable them to complete assignments, without participating in the selection process. Eventually, however, any officer currently assigned to one of the SIU predecessor units, who chooses not to apply for the SIU, will be transferred out of the SIU: no one will be grandfathered into the new unit.

Twelve of the thirty-nine questions in the application questionnaire seek medical information, information concerning a police officer's behavior, and financial information about the officer and his or her family.[1] The Police Department states on the Fact Sheet that the polygraph examination will be used to verify the information supplied by the applicant in the questionnaire. The Fact Sheet notes, however, that:

[p]olygraph examinations will not be given until the adoption and passage of new Civil Service regulations and the completion of a pending labor grievance or court approval. If this occurs after you have been selected for assignment to the Special Investigations Bureau, you will be required to take the polygraph examination at the time as a deferred final step in the selection process ...

Because of the deferral of the polygraph examination at this time, it will be necessary to sign a certification stating that your answers in the questionnaire are true and correct.

Joint Appendix at 533(a) [hereinafter "Jt. App."] (Fact Sheet). The certification states that the applicant certifies that his written answers to the questions are true and correct and that he understands that any false statements are punishable and are subject to the penalties prescribed in 18 Pa.C.S.A. § 4904 (1983)[2], which prohibits

1. These twelve questions are:

   15. List any member of your family (including in-laws) who has ever been arrested. (Include name, date, place, charges, final disposition, if known).

   18. List any physical defects or disability, also list any extended time spent in the hospital for *any* reason.

   19. Are you presently using any prescription drugs? [I]f yes, state the drug, the need for it and the dosage.

   20. Are you now or have you ever been attended, treated or observed by any doctor or psychiatrist or at any Hospital or Mental Institution on an in-patient or out-patient basis for any mental or psychiatric condition? If yes, give the dates and the nature of the treatment.

   21. Do you gamble? a) How often? b) How much? c) What type?

   22. Do you use alcoholic beverages? a) How often? b) How much?

   25. List each loan or debt over $1,000
   a) Mortgage/rent
   b) Car loans
   c) Alimony/Child Support
   d) Other

   26. Salary, wages and Fees: List all sources of income in the form of salary, wages, fees and other compensation for services received by you, your spouse, or your minor dependent children during 1985 including your Departmental salary.

   27. INCOME FROM PROPERTY, BUSINESS, PARTNERSHIP, OR OTHER ENTITY: List sources from which $500 or more was received by you, your spouse, or your minor dependent children during 1985 including all securities, mutual fund income, Trust income and Business income.

   28. PROPERTY OR INVESTMENTS: List all properties and investments you own and gains which equal or exceed both $500 and 5% of the purchase price, received by you, your spouse, or your minor dependent children during 1985.

   29. GIFTS AND HONORARIA: DO NOT list gifts exchanged among certain family members. DO LIST all other sources of $100 or more (in the aggregate during 1985) in gifts or honoraria received by you, your spouse, or your minor dependent children. Gifts include transactions in which you received at least $100 more in money or property value compared to what you paid or exchanged.

   30. OFFICES AND DIRECTORSHIPS: List all such positions in any entity or association whether for profit or not for profit, held by you, your spouse, or your minor dependent children during 1985.
   Joint Appendix at 538a–543a.

2. This statute states:

   § 4904. **Unsworn falsification to authorities**
   (a) In general.—A person commits a misdemeanor of the second degree if, with intent to mislead a public servant in performing his official function, he:
   (1) makes any written false statement which he does not believe to be true;
   (2) submits or invites reliance on any writing which he knows to be forged, altered or otherwise lacking in authenticity; or
   (3) submits or invites reliance on any sample, specimen, map, boundary mark, or other object which he knows to be false.
   (b) **Statements "under penalty".**—A person commits a misdemeanor of the third degree if

unsworn falsifications to authorities. *See* Jt.App. at 532a.

In response to the announcement of the application procedures for the SIU, the FOP filed a grievance claiming that the polygraph examination violated its labor agreement with the City of Philadelphia. The FOP also filed a complaint in the Court of Common Pleas of Philadelphia County against Philadelphia and the Police Commissioner, asking for an injunction of the polygraph examination requirement pending arbitration of the grievance. The FOP withdrew this request for a preliminary injunction after the Department agreed to refrain from implementing the polygraph requirement pending arbitration of the issue.

On February 26, 1986 the FOP filed a complaint in federal district court under 42 U.S.C. § 1983, challenging the Department's use of the polygraph and twelve of the items on the questionnaire, on the grounds that they violated the police officers' federal constitutional rights under the first, fourth, fifth and fourteenth amendments and their right to privacy under the Pennsylvania Constitution. The district court held a three-day evidentiary hearing, after which it issued an order permanently enjoining Philadelphia and the police department from requiring SIU applicants to answer all twelve of the challenged questions. The district court did not rule on the polygraph examination as a grievance was before an arbitrator for resolution.[3]

The City and Police Commissioner appealed. On appeal, this Court on February 17, 1987 largely reversed the district court's order and remanded. We rejected the district court's holding with regard to all but one of the challenged questions, but

directed the district court to continue the injunction "until the City, the Commissioner, or other appropriate official establishes written, explicit, and binding rules that contain adequate safeguards against unnecessary disclosure of the confidential information elicited in response to the SIU questionnaire." *FOP I*, 812 F.2d at 118. As to the remaining question, the injunction was affirmed. *Id.*[4]

Following this decision, the Police Commissioner promulgated a directive limiting access to the completed questionnaires, specifying procedures for storing the information, and setting forth the consequences, including possible dismissal, for any unauthorized disclosure. In light of this directive, Philadelphia on March 17, 1987 asked the district court to dissolve the continuing injunction. The district court denied the motion, citing this Court's earlier opinion. The district court reasoned that while the directive was written and explicit, it was not binding under Pennsylvania law because it had not been approved by the Administrative Board pursuant to the Philadelphia Home Rule Charter, 351 Pa.Code § 8–406 (1979). On July 17, 1987, the City appealed from the district court's refusal to dissolve the injunction. On appeal, this Court held that the directive was not of the kind that the Administrative Board is required to approve, and that it is legally binding despite the lack of review. *See Fraternal Order of Police, Lodge 5 v. City of Philadelphia*, No. 87–1399, slip op. at 8 (3d Cir. December 30, 1987) (unpublished opinion) (FOP II) [838 F.2d 460 (table)]. We remanded in order to permit the district court to dissolve the injunction, noting that the district court retained jurisdiction to continue the injunction "if it finds some other valid reason for doing so." *Id.* at 12.

---

he makes a written false statement which he does not believe to be true, on or pursuant to a form bearing notice, authorized by law, to the effect that false statements made therein are punishable.

    **(c) Perjury provisions applicable.**—Section 4902(c) through (f) of this title (relating to perjury) applies to this section.
18 Pa.C.S.A. § 4904 (1983).

**3.** In a decision dated June 30, 1986, the arbitrator ruled that there was no basis in the context

of the collective bargaining agreement to sustain the Union's grievance and denied the grievance. *See City of Philadelphia v. Fraternal Order of Police*, No. 86–1144, slip op. at 5 (E.D.Pa. January 25, 1988) [available on WESTLAW, 1988 WL 6134].

**4.** We ordered that the use of Question 30, concerning offices and directorships, be permanently enjoined in its present form. *See FOP I*, 812 F.2d at 120.

On remand, the district court initially entered an order dissolving the injunction. After further consideration, however, the district court issued an order vacating its dissolution of the injunction and permanently enjoining the City from requiring that applicants to the SIU complete the twelve disputed questions, on the ground that the administration of the questionnaire violates the applicants' fifth amendment rights. *See Fraternal Order of Police, Lodge 5 v. City of Philadelphia*, No. 86–1144, slip op. (E.D.Pa. January 25, 1988). The district court based its holding on its findings that the application process was characterized by both coercion and self-incrimination. First, it found that the application process is coercive in nature, because "while officers would not be dismissed for failing to complete the questionnaire, they may not receive promotions and the officers in the MID, the EAD, and the IAB would be demoted." *Id.* at 9. In finding that the process was coercive, the district court also relied on *FOP I*, in which this Court held that for purposes of the fourteenth amendment analysis of privacy rights, we could not regard "the voluntary nature of the application, even by those who are not currently employed in similar units, as a basis to pretermit analysis of whether the condition of employment violates the applicants' privacy rights." *FOP I*, 812 F.2d at 112. Second, with respect to the issue of self-incrimination, the district court noted that, according to testimony by the Police Commissioner, a police officer who gave false information on the questionnaire would be subject to two kinds of penalties. Under the departmental disciplinary code, the officer would face dismissal for making a false official report. In addition, as a consequence of being required to certify under Pennsylvania law, that answers in the questionnaire are true and correct, *see* 18 Pa.C.S.A. § 4904 (1983) (prohibiting unsworn falsifications to authorities), an officer would face prosecution for any false statements made on the questionnaire. *See Fraternal Order of Police, Lodge 5 v. City of Philadelphia*, No. 86–1144, slip op. at 9–10 (E.D.Pa. January 25, 1988). The district court concluded that, "[b]y compelling officers to apply for a position in the SIU under the threat of demotion or inability to attain a promotion, the defendants effectively coerce a waiver of the officers' constitutional privilege against self-incrimination as a condition of continued employment since their responses to the questionnaire may result in their dismissal from the police force or prosecution." *Id.* at 10.

On this appeal, Philadelphia seeks reversal of the district court's judgment and a remand to the district court for dissolution of the injunction so that the police department can implement the planned SIU application process. It argues that the fifth amendment prohibition on compelled self-incrimination does not protect a public employee from disciplinary action for refusing to answer questions related to official duties, as long as the government does not ask the employee to waive the privilege against self-incrimination. The City maintains that it does not seek such a waiver. It argues further that the potential for officers to be prosecuted on the basis of answers to the questionnaire also does not result in use of the questionnaire violating the fifth amendment because in the context of a prosecution, the fifth amendment would immunize any coerced statement from use. Moreover, the City argues that, since this case does not present a concrete factual setting involving a prosecution, this Court need not address the issue of immunity.

As this case involves the application of legal principles, our review is plenary. *See Peterkin v. Jeffes*, 855 F.2d 1021, 1026 (3d Cir.1988).

## II.

The fifth amendment to the constitution provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V.[5]

---

**5.** The fifth amendment's guarantee against compelled self-incrimination applies to actions by states through the fourteenth amendment. *See*

The FOP urges us to affirm the district court's ruling on the following grounds: because completion of the application [6] is compelled by the threat of demotion or failure to obtain a promotion, the fifth amendment is violated in three circumstances if the information on the application is self-incriminating, (1) in police department disciplinary proceedings for both lying in the report or substantive offenses uncovered by it; (2) in a prosecution for lying on the questionnaire in violation of the law against unsworn falsifications; (3) in prosecutions for substantive offenses uncovered by the selection process.

We note at the outset, and briefly, that this argument presents us with a mixture of plainly erroneous and potentially meritorious but more difficult issues. There can be no question, for instance, that the police department may prosecute officers for lying on the questionnaire in violation of Pennsylvania law. The fifth amendment does not protect a citizen against the consequences of committing perjury. *See U.S. ex rel. Annunziato v. Deegan,* 440 F.2d 304 (2d Cir.1971) (upholding public employee's conviction for perjury based upon testimony obtained under threat of discharge).[7] Thus, for example, if a subpoenaed witness lies, he or she may be prosecuted. Even though his or her testimony under a subpoena is compelled, his or her privilege against self-incrimination is not violated. It is also clearly established that the privilege against self-incrimination is not infringed when police officers are disciplined or discharged for failing to "answer questions specifically, directly, and narrowly relating to the performance of their official duties." *Uniformed Sanitation Men Ass'n v. Commissioner of Sanitation,* 392 U.S. 280, 284, 88 S.Ct. 1917, 1920, 20 L.Ed.2d 1089 (1968); *Gardner v. Broderick,* 392 U.S. 273, 278, 88 S.Ct. 1913, 1916, 20 L.Ed.2d 1082 (1968). In the fifth amendment context, some courts have found information of the kind sought here to be related to a police officer's work. *Cf. O'Brien v. DiGrazia,* 544 F.2d 543, 546 (1st Cir.1976) (questions about police officer's finances are job-related),[8] *cert. denied sub nom. O'Brien v. Jordan,* 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977); *but cf. Confederation of Police v. Conlisk,* 489 F.2d 891, 895 (7th Cir 1973) (questions concerning whether police officer invoked the privilege against self-incrimination at a grand jury hearing are not job-related), *cert. denied sub nom. Rochford v. Confederation of Police,* 416 U.S. 956, 94 S.Ct. 1971, 40 L.Ed.2d 307 (1974). In *FOP I,* in the context of determining whether the questions unconstitutionally intrude on a police officer's privacy, we held that, except for Question 30, concerning membership in organizations, all the questions are relevant to employment in the SIU. *See FOP I,* 812 F.2d at 114–16. The FOP on this appeal does not argue that the questions are unrelated to an officer's duties, so that we need not take this point further.

*Malloy v. Hogan,* 378 U.S. 1, 8, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653 (1964).

**6.** We assume here that the application process is a "criminal case" within the meaning of the fifth amendment. *See Hoffman v. United States,* 341 U.S. 479, 486–87, 71 S.Ct. 814, 818–19, 95 L.Ed. 1118 (1951) (a criminal case is any proceeding in which answers to questions might tend to incriminate the witness in a subsequent criminal proceeding).

**7.** The court stated that
appellant was not prosecuted for *past* criminal activity based on what he was forced to reveal about himself; he was prosecuted for the *commission of a crime while testifying,* i.e., perjury. In short, while a public employee may not be put to the Hobson's Choice of self-incrimination or unemployment, he is not privileged to resort to the third alternative, i.e., lying.
*Annunziato,* 440 F.2d at 306.

*Cf. Gniotek v. City of Philadelphia,* 808 F.2d 241, 245–46 (3d Cir.1986) (fact that police officers who were subjects of a criminal investigation had to choose whether to talk or remain silent in a pre-termination hearing does not offend the fifth amendment), *cert. denied,* — U.S. —, 107 S.Ct. 2183, 95 L.Ed.2d 839 (1987) (citing *Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970); *United States v. Rylander,* 460 U.S. 752, 103 S.Ct. 1548, 75 L.Ed. 2d 521 (1983)).

**8.** In *FOP I,* we rejected the *O'Brien* holding to the extent that it held that there is little constitutional privacy protection for financial information such as that sought by the questionnaire. *FOP I,* 812 F.2d at 115.

A final question, and the most difficult one posed by the parties' briefs, is whether the City is correct in arguing that because in the context of an actual prosecution—which is not the context here—the fifth amendment would immunize any coerced statement from use, there is no fifth amendment problem in directing SIU applicants to provide even self-incriminating answers to job-related questions in the application, or in dismissing them for declining to answer the questions, as long as the department does not require the officers to waive their fifth amendment privilege. Two federal courts of appeals have accepted similar arguments. *See Hester v. City of Milledgeville,* 777 F.2d 1492 (11th Cir. 1985) *reh'g. denied,* 782 F.2d 180 (11th Cir.1986); *Gulden v. McCorkle,* 680 F.2d 1070 (5th Cir.1982), *cert. denied,* 459 U.S. 1206, 103 S.Ct. 1194, 75 L.Ed.2d 439 (1983). However, in other instances, appellate courts have held to the contrary that before subjecting a public employee to discharge for declining to answer questions relating to their official duties, an employer must not merely desist from requiring a waiver of the employee's right not to provide self-incriminating information, but must affirmatively advise the employee that the answers that he or she provides may not be used against him or her in a criminal proceeding, except one for prosecution for answering falsely under the applicable law. *See Benjamin v. City of Montgomery,* 785 F.2d 959 (11th Cir.1986), *cert. denied,* 479 U.S. 984, 107 S.Ct. 571, 93 L.Ed.2d 575 (1986); *United States v. Devitt,* 499 F.2d 135, 141 (7th Cir.1974), 421 U.S. 975, 95 S.Ct. 1974, 44 L.Ed.2d 466

(1975); *Confederation of Police v. Conlisk,* 489 F.2d 891 (7th Cir.1973), *cert. denied sub nom. Rochford v. Confederation of Police,* 416 U.S. 956, 94 S.Ct. 1971, 40 L.Ed.2d 307 (1974); *Kalkines v. U.S.,* 473 F.2d 1391, 200 Ct.Cl. 570 (1973); *Uniformed Sanitation Men Ass'n v. Commissioner of Sanitation,* 426 F.2d 619 (2d Cir.1970), *cert. denied,* 406 U.S. 961, 92 S.Ct. 2055, 32 L.Ed.2d 349 (1972) *(Uniformed Sanitation II).*[9] Although we recognize the importance of the issue, we find it unnecessary to decide whether a public employer must inform employees that use immunity attaches to questions relating to official duties, when the employee is required, on pain of dismissal, to answer the questions.

■ The basis of our reversal of the district court's decision in this case is a simple one. The privilege against self-incrimination applies to *compelled* incrimination. We do not agree with the district court that the police officers in this case are compelled within the meaning of the fifth amendment to fill out the application for the SIU. The district court based its finding that the application process was coercive on the testimony by the Police Commissioner concerning the impact on an officer's position in the department if he failed to fill out the application, and on the district court's reading of the decision of this Court in *FOP I.* Assuming *arguendo* that there is an action short of firing that an employer could take that could constitute compulsion within the meaning of the fifth amendment,[10] we find that neither the

**9.** In *Uniformed Sanitation II,* the City of New York instructed its employees, who were being questioned in connection with corruption, as follows:

> I want to advise you, Mr. ...., that you have all the rights and privileges guaranteed by the Laws of the State of New York and the Constitution of this State and of the United States, including the right to be represented by counsel at this inquiry, the right to remain silent, although you may be subject to disciplinary action by the Department of Sanitation for the failure to answer material and relevant questions relating to the performance of your duties as an employee of the City of New York.

> I further advise you that the answers you may give to the questions propounded to you at this proceeding, or any information or evidence which is gained by reason of your answers, may not be used against you in a criminal proceeding except that you may be subject to criminal prosecution for any false answer that you may give under any applicable law, including Section 1121 of the New York City Charter.

*Uniformed Sanitation II,* 426 F.2d at 621.

**10.** The FOP has not cited a single case in the employment context in which any consequence short of suspension or dismissal from employment has been held to constitute compulsion for

record in this phase of the case, nor our statements in *FOP I* lead to the conclusion that an officer's participation in the SIU application process is compelled.

The district court stated that police officers would not be dismissed for failing to complete the questionnaire, and the FOP on appeal concedes the accuracy of this finding. But the district court states that the officers are "compell[ed] ... to apply for a position in the SIU under the threat of demotion or inability to attain a promotion." *Fraternal Order of Police, Lodge 5 v. City of Philadelphia*, No. 86-1144, slip op. at 10 (E.D.Pa. January 25, 1988). The officers were told that they could withdraw their names from the selection process at any time, that the fact of the withdrawal would not appear on their record, nor be considered in any way in connection with their future career with the department, and that upon withdrawal the questionnaire and any related papers would be destroyed. *See* Jt.App. at 533a–534a. Indeed, the following statement to this effect is printed on the questionnaire:

All answers to this Questionnaire are considered confidential and will not be disclosed to any agency or unauthorized person, nor will they be made part of any departmental record or used against you in any manner in your future career with the department.

Jt.App. at 536a. Nothing in the record supports the district court's finding that an officer who declines to fill out the questionnaire will be demoted, either by suffering a diminution in rank or by suffering a decrease in salary. This finding, then, is clearly erroneous. There are only two consequences that we can detect based on the record before us of opting out of the application process. An officer who was a member of one of the SIU's predecessor units will not have the option of being in the SIU because he or she has chosen not to apply, although such an officer currently has temporary status in the SIU pending completion of the application process. In effect, this officer will be subject to a lateral transfer. An officer who was not a

member of the predecessor units who wishes to be in the SIU will not be considered for a position because he or she has chosen not to apply. In neither case does the Department impose a penalty on an officer's decision not to apply.

For its finding that police officers electing not to fill out the questionnaires would be threatened with the inability to obtain a promotion, the district court relied on testimony by Captain George Craig, a police officer with the department, who testified that officers were told that completing the questionnaire "may help promotions in the future." Jt.App. at 215a–216a. This suggestion, which was not included in the departmental fact sheet concerning the SIU application process, is too speculative to be regarded as constituting compulsion of an employee for fifth amendment purposes.

Because the decision not to participate in the SIU application process does not carry with it any diminution of a police officer's income or a demotion in rank, we find that the Department's application process is not coercive, and that the information an officer provides in his or her answers on the questionnaire is not compelled within the meaning of the fifth amendment. We are not persuaded to alter this view by the district court's reliance on this Court's holding in *FOP I* that the voluntary nature of the SIU application process does not foreclose a constitutional privacy claim. *Id.* at 111–12. In *FOP I* we noted that, for members of the SIU's predecessor units, the decision not to complete the SIU application "would result in a return to normal duty which could subject some of these officers, for example those who investigated misconduct by other police personnel, to reprisals." *Id.* at 111. In *FOP I*, however, we were not faced with a claim under the fifth amendment. Consequently, we did not address whether a lateral transfer due to an officer's decision not to apply for a newly organized unit, a transfer that could have the same consequences for an officer that such a transfer could at any other time, can amount to compulsion within the meaning of the fifth amendment. In

fifth amendment purposes. We have searched    and found none ourselves.

the context of this appeal, then, our holding in *FOP I* is inapposite.[11]

## III.

It is regrettable that the police department has been confronted with so many specious arguments in their efforts to deal with the sequelae of a recent history of corruption within the department. As we view the present record, there is no basis to further delay the process. For the reasons stated above, we will vacate the decision of the district court, remand this case and direct the district court to dissolve its permanent injunction against use of questions 15, 18–22, and 25–29 by the Philadelphia Police Department in its Special Investigations Unit questionnaire. Except for Question 30, the Philadelphia Police Department should not be further enjoined from the use of any of the questionnaire involved in this litigation.

**11.** Moreover, we note that in *FOP I* in support of the statement that "[t]ests applied as a prerequisite for continued employment are hardly to be considered voluntary," we relied in part on *Ca-pua v. City of Plainfield*, 643 F.Supp. 1507, 1511 (D.N.J.1986), a case in which the employees were required to submit to urinalysis or forfeit their employment. 812 F.2d at 111–112.